The STATE of Texas & The Texas
Department of Highways Public
Transportation, Appellants

v.

Terry WILLIAMS, Appellee.

No. 12–93–00236–CV.

Court of Appeals of Texas,
Tyler.

Aug. 31, 1995.

Rehearing Overruled Oct. 18, 1996.

Ronald E. Garner, Austin, and Michael W. Lockhart, Beaumont, for appellants.

Terry W. Wood, Beaumont, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Terry Williams sued the Texas Highway Department under the TEXAS TORT CLAIMS ACT after he was injured when his truck hit an obstruction on a state highway. The jury found that the Highway Department knew, or should have known, of the obstruction, and awarded Williams $100,000 in damages. We will affirm.

On August 4, 1982, Williams was driving a log truck southbound on State Highway 87 in Shelby County. After he drove over a hill, Williams saw a Highway Department "potholing" crew working on the highway. He then saw a gray metallic road sign that was lying face-down in the southbound lane about 15 feet ahead of him. Before Williams was able to react, he ran over the sign, his right front tire blew out, and he lost control of the truck. As a result of the collision, Williams suffered injuries to his spine that ultimately required surgical fusions of the vertebrae in his neck.

In its first point of error, the Highway Department alleges that no "special defect" existed as a matter of law. In its second point, the Highway Department contends that the court erred when it instructed the jury in accordance with the special defect theory of recovery rather than the regular defect theory. In its third point, the Highway Department complains that the court's charge did not properly instruct the jury on the condition in the roadway that would be considered an obstruction under the special

defect theory. Because of the similarity of these issues, we will address them together.

■ The pivotal issue in this case is whether a road sign, lying face down, which obstructs a lane in the highway, is a special defect. Williams filed suit against the Highway Department alleging that the sign that he hit on the highway was a special defect. Under the TEXAS TORTS CLAIMS ACT, a governmental entity can be held liable for injuries incurred as a result of regular or special premise defects. Section 101.022 describes special defects as "excavations or obstructions on highways, roads or streets." TEX. CIV.PRAC. & REM.CODE ANN. § 101.022 (Vernon 1986). To recover for injuries incurred as a result of a regular defect, a plaintiff must prove that the defendant had actual knowledge of a dangerous condition. *State Department of Highways and Public Transportation v. Payne*, 838 S.W.2d 235, 237–241 (Tex.1992). If the premises defect is a special defect, the plaintiff must prove that the state "should have known" of the condition. *Id.* The courts have analyzed the special defect issues on a case-by-case basis and have consistently described a special defect as a condition "which presents an unexpected and unusual danger to ordinary users of roadways." *Id.* at 235. As the Highway Department has pointed out, not every obstruction or danger is a special defect. *See Tarrant County Water Control and Impr. Dist. No. 1 v. Crossland*, 781 S.W.2d 427, 434 (Tex.App.—Fort Worth 1989, writ denied). A special defect is a defect "distinguished by some unusual quality" or "being other than the usual." *Id.* Whether a condition is a regular defect or a special defect is a question of law. *Payne*, 838 S.W.2d at 238.

The Highway Department argues that the sign in this case was not an excavation, it did not render the road impassible, and it did not constitute a special defect. Therefore, it contends that, as a matter of law, Williams' injuries were not caused by a special defect and that the issues submitted to the jury were thus erroneous. The Highway Department cites *Department of Transportation v. Horrocks*, 841 S.W.2d 413 (Tex.App.—Dallas 1992), *rev'd and remanded*, 852 S.W.2d 498 (1993), in support of its position that debris

on a roadway is not a special defect. However, the defect in *Horrocks* was a piece of metal that was nine inches long, three inches wide, and less than one-quarter of an inch thick. In addition, the metal was laying on the *shoulder* of the road. The court held in *Horrocks* that the object was "not large enough to constitute a risk to ordinary users of the highway." *Id.* at 415.

■ Here, the sign was on the traveled portion of the *roadway*, not on the shoulder. The sign was metal and measured two and one-half feet by three and one-half feet, not including the legs or the base. Williams argues that the facts in his case are more factually related to *Andrews v. City of Dallas*, 580 S.W.2d 908 (Tex.Civ.App.—Eastland 1979, no writ), in which the court found that a left-turn-signal base located six inches from the traveled portion of the roadway was a special defect. He reasons that drivers use caution when they travel on the shoulder of the road because it is not uncommon for debris to be on the shoulder, but drivers expect the traveled portion of the highway to be free from obstructions and excavations. *See County of Harris v. Eaton*, 573 S.W.2d 177 (Tex.1978). Although the road sign that Williams struck was never found, gouges were found in the southbound lane along with the tire marks from Williams' right front tire. There is a dispute between the parties about the size and shape of the sign that Williams hit. However, it appears to be undisputed that a large road sign was in the road. We conclude that a large metal sign lying face down on a lane of the road, would be an unusual and unexpected danger that would create a risk for ordinary users of the highway and, as a matter of law, is a special defect about which the Highway Department knew or should have known.

Next, we address whether the court erred when it failed to instruct the jury that the Highway Department had to have actual knowledge of the obstruction and when it submitted issues to the jury in accordance with the regular defect theory as opposed to the special defect theory. The jury was asked to answer the following questions:

### Question No. 1

QUESTION: Due [sic] you find from the preponderance of the evidence that on August 4, 1982, an obstruction in the roadway created a dangerous condition on the roadway in question?

Answer "Yes" or "No"

ANSWER: <u>Yes</u>

### Question No. 2

QUESTION: Did the negligence, if any, of those named below proximately cause the occurrence in question?

With respect to the condition of the roadway, the State Department of Highways and Public Transportation was negligent if:

a. the obstruction caused an unreasonable risk of harm, and

b. the State Department of Highways and Public Transportation knew, or should have known, of the obstruction, and

c. the State Department of Highways and Public Transportation failed to adequately warn Terry Williams of the condition or to make the condition reasonably safe, and

d. Terry Williams did not have knowledge of the condition.

Answer "Yes" or "No" for each of the following:

Terry Williams: <u>NO</u>

Texas State Department of Highways and Public Transportation: <u>YES</u>

Because of our holding that the obstruction in the highway was a special defect, the Highway Department's actual knowledge of the obstruction was not an appropriate instruction to be given the jury. Rather, the appropriate instruction was whether the Highway Department *should have known* of the dangerous condition; therefore, the court did not err when it submitted issues and instructions to the jury on the basis of a special defect.

The Highway Department also complains that the court's charge did not limit the question to a road sign or otherwise describe the obstruction that it considered to be a special defect. At trial, the evidence was conflicting as to whether the object that Williams hit was metal or wood, triangular or square, lying face up or face down, mounted with a bracket or with a tripod, 2½ feet by 3 feet, or 4 feet by 4 feet. Therefore, the Highway Department reasons that the charge gave the jury a "blank check" and failed to preclude the jury from finding that any piece of "flat road scrap" could have been the obstruction.

■ A similar argument was made by the appellant in *Zachary,* in which the court asked the jury if "the condition of the roadway in question constitutes an obstruction." *State of Texas Dept. of Highways & Public Transp. v. Zachary,* 824 S.W.2d 813, 815 (Tex.App.—Beaumont 1992, no writ). The appellant in that case argued that the jury was not properly charged because the word "obstruction" would encompass all of the suggested meanings, but not all of the suggested meanings would constitute a special defect. *Id.* The court in *Zachary* concluded that there is nothing in Section 101.022(b) of the TEXAS TORT CLAIMS ACT, nor in case law, that suggests that a special meaning or a technical definition must be given to a jury for a finding of an obstruction. *Id.* "We hold that the word (obstruction) is a common term capable of common understanding with no need of court instructed definitions. This court must only define legal or technical terms." *Id.* We agree with Williams that the jury did not have to determine if the obstruction were metal or wood, triangular or square, face-up or face-down, because the trial court concluded, as a matter of law, that the road sign constituted an obstruction and the jury found that the obstruction created a dangerous condition of which the Highway Department should have had knowledge. The Highway Department's first three points are overruled.

In its fourth point, the Highway Department challenges the legal and factual sufficiency of the evidence to support the verdict. The Highway Department alleges that there is no evidence to support the jury's answer to Question Number 1. In the alternative, it argues that the jury's answer was against the great weight and preponderance of the evidence. The Highway Department questions

the credibility of the jury's verdict because of the following evidence in the record that appears to be contrary to the verdict:

a. The blowout that Williams had does not, by itself, prove that there was an obstruction in the road.

b. The evidence of an obstruction came from Williams, Williams's father, and Williams's friend, Cartwright.

c. No one found the sign that Williams hit.

d. If the sign was lying face down, why did the road not have paint chips on it?

e. William's friend, Cartwright, testified that he had driven through the area shortly before Williams and did not see a sign lying in the road or any dangerous condition.

f. The Highway Department did not use warning signs for potholing operations.

g. The highway crew was working on the northbound portion of the highway. Even if the Highway Department did use warning signs to protect the highway crews, any warning sign would be placed on the right side going north for a northbound working crew, rather than on the right side going southbound.

h. The Highway Department's reconstruction expert and two other state employees testified that whatever caused Williams' truck to have a blow out was not a sign posted by the Highway Department.

■ When reviewing a "no evidence" point of error, this Court must consider the evidence, testimony, and reasonable inferences therefrom that support the jury's answer, and we must disregard evidence, testimony, and inferences adverse to the jury's findings. *See In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex.1992). We must uphold the jury verdict if there is any evidence of probative value to support it. *See Id.* When reviewing a "factual insufficiency" point, this Court must consider and weigh all of the evidence and set aside the verdict only if the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set

aside. *Id.* It is the jury's duty to judge the credibility of witnesses, to assign weight to be given to the testimony, and to resolve any conflicts and inconsistencies in the testimony. *Cain v. Bain,* 709 S.W.2d 175, 175 (Tex.1986).

■ We agree with the Highway Department that the evidence presented at trial was conflicting. However, in reviewing the evidence according to the standards of review, we conclude that the evidence was both legally and factually sufficient to support the verdict. Williams testified that he was driving 55 miles-per-hour when he topped a hill and saw a large, gray, metal sign, lying face down, about 15 feet away from him, obstructing the southbound lane. The existence of the sign was corroborated by several witnesses who verified the gouge marks and imprints of a sign in the roadway that were caused by the weight of Williams' truck. One of the witnesses was Trooper Corbell who investigated the accident. Corbell repeatedly described gouge marks in the highway in his accident report. Grady Fountain, a maintenance technician for the Highway Department, testified that he saw Williams' truck hit the sign. The first people at the accident scene to render aid to Williams immediately after the accident were personnel from the Highway Department's "potholing" crew. Ample evidence supports the jury's verdict in this case; therefore, the Highway Department's fourth point is overruled.

■ In point five, the Highway Department contends that the court erred when it admitted into evidence Trooper Corbell's accident report. In his report, Corbell stated, "[T]here were gouges in the roadway where the vehicle had run over an object, then tire-marks showing [that the] tire immediately went flat." Over the Highway Department's objection, Corbell's report was admitted into evidence without any testimony regarding Corbell's qualifications or regarding the basis for the statements or opinions included in the report. However, the accident report was a certified copy of a public record and was properly authenticated under Rule 902(4) of the TEXAS RULES OF CIVIL EVIDENCE.

The Highway Department argues that, even if Williams established Corbell's acci-

dent report as a business record, Williams did not validate that all of the statements and opinions in the report were based upon Corbell's personal knowledge. Based upon this argument, the Highway Department concludes that Corbell's statements regarding the cause of the accident were hearsay and were not based on Corbell's perception of the facts or his expert analysis. We do not agree.

Rule 803(8) provides that records from public agencies are not hearsay if the records set forth:

(A) the activities of the officer or agency; or

(B) matters pursuant to duty imposed by law as to which matters there was a duty to report, or

(C) special findings resulting from an investigation made pursuant to authority granted by law.

TEX.R.CIV.EVID. 803(8). The certificate on Corbell's accident report states that the report "sets forth matters observed pursuant to duty or factual findings resulting from an investigation made pursuant to authority granted by law." Therefore, it appears that the court properly admitted the report by finding that it was a public record, and an exception to the hearsay rule. *See Carter v. Steere Tank Lines, Inc.,* 835 S.W.2d 176 (Tex.App.—Amarillo 1992, writ denied).

■ Even if the court erred when it admitted the report, any error would be harmless. To reverse a judgment based upon the admission of this report, the Highway Department must show that: (1) the trial court committed error; and (2) the error was reasonably calculated to cause, and probably did cause rendition of an improper judgment. *See* TEX.R.APP.P. 81(b)(1); *see also, Gee v. Liberty Mutual Fire Insurance Company,* 765 S.W.2d 394 (Tex.1989). In addition to Corbell's accident report, Plaintiff's Exhibit 13 was a six page statement made by Corbell that was admitted into evidence without any objection from the Highway Department. This six page statement contained the same information with significantly more details about the investigation than did Corbell's accident report. It is well established that if erroneously admitted evidence is cumulative of other evidence in the case, any error is harmless. *Mancorp Inc. v. Culpepper,* 802 S.W.2d 226, 230 (Tex.1990). The fifth point is overruled.

In the sixth point, the Highway Department challenges the legal and factual sufficiency of the evidence to support the jury's finding that Williams gave the Highway Department notice of his claim against the state, which was a condition precedent to his recovery. Williams' father, Robert Williams, testified that he took his son to the Highway Department barn in San Augustine, Texas, about one and one-half months after the accident. The purpose of Robert Williams' trip was to find out the names of the two men that took his son to the hospital. Williams' father could not recall the person's name that he spoke with, but he testified that he told "a supervisor" at the Highway Department that he wanted to report an accident on State Highway 87, that he had a lawyer, and that he was going to file a notice against the state for his son's injuries. According to Robert Williams, the supervisor told him that the Highway Department already had a report on the accident. At that time, Robert Williams testified that the supervisor called Fountain into his office. Fountain verified at trial that he remembered Williams' father coming to the Highway Department. Although the record is clear that no written notice of Williams injuries was filed with the State, we hold that the evidence is sufficient to support the jury's finding that the state received notice of Williams' claim.

■ Section 101.101(a) of the TORT CLAIMS ACT requires that timely notice be given when a plaintiff claims that the state is culpable for an accident. TEX.CIV.PRAC. & REM.CODE ANN. § 101.101(c) (Vernon 1986). Formal written notice is excused if the state obtains actual notice that "death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." *Id.* Actual notice of a claim need not include actual notice of the time, place and manner of the injury, as is required for written notice of the claim. However, an accident report filed by the Department of Public Safety does not impute

notice to the Highway Department. *Reese v. State Department of Highways and Public Transportation,* 831 S.W.2d 529, 530–31 (Tex.App.—Tyler 1992, writ denied).

█ On the day that Williams' accident occurred, it is undisputed that the Highway Department was conducting a "potholing" operation just south of the accident site, that personnel of the Highway Department witnessed Williams' accident, that Highway Department personnel were the first people to arrive at the scene after the accident and took Williams to the hospital after the accident. Grady Fountain testified that he checked Williams after the accident and found no broken bones. Viewing the evidence in the light most favorable to the verdict, and weighing the evidence in accordance with the standards previously set out, we hold that the evidence is legally and factually sufficient to support the jury's finding that the Highway Department had actual notice of Williams' claim against the state. Point six is overruled.

By its seventh point, the Highway Department contends that the court erred when the court gave the jury a so-called "Dynamite charge." Initially, Williams filed this action in federal district court, but the case was dismissed for lack of diversity jurisdiction. Williams then filed suit in Shelby County district court, and it was tried before a jury in June, 1992. After a week-long trial, the jury deadlocked 9–3 in favor of Williams. The second trial began February 1, 1993, and the court's charge was submitted to the jury at 11:00 A.M. on February 3. At 5:35 P.M. on that same day, the jury sent out a note indicating that 8 jurors had answered "yes" on question number 1, and that 4 jurors had answered "no." At 5:45, the judge determined that the jury was not making progress and the court recessed until the next day. At 5:00 P.M. on February 4, the jury sent out a note informing the court that they had "deadlocked." Again, the court recessed until 8:30 A.M. the following day. At 8:30 A.M. on February 5, the court gave the following supplemental charge to the jury:

> Ladies and Gentlemen of the Jury: You are instructed that in a large proportion of the cases absolute certainty cannot be expected. If you can possibly end this litigation by your verdict you should do so. I don't mean to say that any individual juror should yield his or her conscience or positive conviction, but I do mean that when you're in the jury room, you should discuss this matter.

> Among yourselves carefully, listen to each other and try, if you possibly can, to reach conclusions on the issues. It is the duty of jurors to keep their minds open to every reasonable argument. A juror should not have any pride of opinion and should avoid hastily forming or expressing an opinion. A juror should not surrender any conscientious views founded upon the evidence. However you should listen with a disposition to be convinced to the arguments of the other jurors. *If a larger number of jurors are for deciding a case one way, those in the minority should consider whether they are basing their opinion on speculation and surmise and not upon the evidence in the case, keeping in mind the impression the evidence has made on a majority of the jurors of equal honest and intellect as the minority.* In particular I again emphasize to you that your deliberations are to be governed by the evidence that has been presented to you in this case and only such evidence, although I certainly expect you to use your common sense. You must make every effort to answer the questions in the charge based only upon what you have heard and seen from the witness stand and not upon unrelated personal experiences or events not in evidence in this particular case. Please bear in mind that if you do not reach a verdict in this case, a mistrial will be declared, you will be discharged and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be impaneled in the same way this jury has been impaneled and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be substantially the same as the questions confronting you and there is no reason to hope that the next jury will find those questions any easier to decide than you have found. Therefore

you are instructed that it is you[r] duty to decide this case if you can conscientiously do so. You will now retire to continue your deliberations.

/s/ *John W. Mitchell, Judge Presiding*

(Emphasis added.)

The jury reached a verdict during the lunch hour.

The Highway Department argues that the court's "dynamite charge" constituted harmful and unfair pressure on the jury members in the minority when the court told the jury to "listen, with a disposition to be convinced, to the arguments of the other jurors." The Highway Department reasons that the charge inappropriately told the jurors who were in the minority to yield unless they were positive, without likewise instructing the majority. It cites *Stevens v. Traveler's Insurance Company,* 563 S.W.2d 223, 228 (Tex.1978), which states:

> Any supplemental charge, such as the original *Allen* charge, which is addressed specifically to the minority jurors of a deadlocked panel is expressly and inherently coercive.

The Highway Department also attached an affidavit of juror, Virginia Bell, to its motion for new trial. In Bell's affidavit, she stated that she was influenced by the court's instructions; therefore, the Highway Department argues that the court coerced the jury to compromise and reach a verdict. We do not agree.

The use of supplemental verdict-urging charges, often referred to as an *Allen* or "dynamite" charge, has been consistently upheld by the Texas courts. *Id.; Golden v. First City Nat'l Bank,* 751 S.W.2d 639 (Tex. App.—Dallas 1988, no writ); *Firestone Tire & Rubber Co. v. Battle,* 745 S.W.2d 909 (Tex. App.—Houston [1st Dist.] 1988, writ denied). The Highway Department's argument relies on the Supreme Court's opinion in *Stevens* and focuses on the following sentence of the charge that addressed the jurors who held to the minority position.:

> If a larger number of jurors are for deciding a case one way, those in the minority should consider whether they are basing their opinion on speculation and

surmise and not upon the evidence of the case, keeping in mind the impression the evidence has made on a majority of the jurors of equal hones and intellect as the minority.

*Stevens,* 563 S.W.2d at 228.

The *Stevens* opinion does indicate that a portion of a supplemental charge that is directed to the minority jurors of a deadlocked panel is inherently coercive. However, the Highway Department ignores the balance of the *Stevens* opinion that is essential to the propriety of the supplemental charge in this case. In *Stevens,* the Supreme Court ruled that a "coercive statement will not invalidate the charge unless it retains its coercive nature when the charge is read as a whole and all of the circumstances surrounding its rendition and effect are considered." *Id.* at 229.

An examination of the charge as a whole, as required by *Stevens,* reveals that the trial court in this case made various admonitions to the jury that nullified the coercive nature of the sentence that it directed to the minority. Throughout the supplemental charge, the trial court warned the jury not to forsake their personal convictions. Immediately prior to the language of which the Highway Department complains is the trial court's warning to the jurors that "a juror should not surrender any conscientious views founded upon the evidence." Finally, at the very end of the court's supplemental charge, the jury was instructed that it was their duty to decide the case only "if you can conscientiously do so." In no event did the trial court instruct the jury that they had to reach a verdict.

At the time of this trial, over 10 years had passed since the accident occurred. This case had been tried one time before and that jury had deadlocked 9 to 3 in favor of Williams. In *Stevens,* the Supreme Court also considered that the jury continued to deliberate for approximately four hours before reaching an agreement, which is exactly the same period of time that the jury in this case continued to deliberate before reaching a verdict. Broad discretion is vested in the trial court to aid in administering and expediting the fact-finding process. *Harris*

*County v. Patrick,* 636 S.W.2d 211 (Tex.Civ. App.—Texarkana 1982, no writ). After examining the circumstances surrounding the submission of the supplemental charge, as required by *Stevens,* we hold that the trial court's submission of the supplemental charge was proper and did not constitute error.

■ In addition, to reverse a judgment based upon an error in the trial court, an appellant must show that there was error and that the error was reasonably calculated to cause, and probably did cause, an improper verdict. TEX.R.APP.P. 81(b)(1); *Herfort v. Hargrove,* 606 S.W.2d 359 (Tex.Civ.App.— Austin 1980, writ ref'd n.r.e.). The jury in this case was polled immediately after they returned the verdict. Ten jurors affirmed that the verdict was their decision. Bell's affidavit that was attached to the Highway Department's motion for new trial was never admitted into evidence, nor did Bell testify at the motion for new trial hearing. In addition, Bell did not sign the verdict form; therefore, any statement made by her that she was coerced to change her mind, is not relevant to prove that the jury's verdict would have been different had the court not given the supplemental charge. We hold that any error made by the court in its supplemental charge to the jury was not harmful. Point of error seven is overruled.

The Highway Department's eighth point of error maintains that the court erred when it allowed Williams to inject inflammatory arguments before the jury during various stages of the trial. The Texas Department of Safety, the Department of Transportation, and the Attorney General's Office participated in the defense of this case. The Attorney General's office provided counsel for the Highway Department. During voir dire, the attorney for Williams stated:

> We believe that the evidence is going to show that three state agencies have circled the wagons, so to speak in the defense of this lawsuit.... [T]he third one is the State Attorney General's Office.

The Highway Department argues that such statements were a personal attack on its counsel. The Highway Department reasons that Williams suggested that the Highway

Department's counsel was involved in a conspiracy with the two other state agencies that were participating in the trial.

■ Williams argues that this statement was made during *voir dire* in the context of a series of questions that were being asked to determine if prospective jurors had contact with the Department of Transportation, Trooper Corbell, and other employees of those agencies. In reviewing the record, we found that Williams' inquiry of individuals during *voir dire* was lengthy, encompassed approximately 20 pages of the statement of facts, and resulted in two jurors being excused for cause. Within the context that the statement was made, the attorney for Williams was properly inquiring whether any members of the venire had a bias that may affect the outcome of the case. Therefore, we hold that the statement made by Williams in this particular context was not improper.

■ Next, the Highway Department complains that the following statements made by Williams were also harmful error:

> Terry Williams ... had no reason that I can think of to make up a story about a sign being in the road. You've heard him classified here at trial as a—I think a malingerer and a liar and—

> .      .      .      .      .

> At least my interpretation of Mr. Garner's case was that Mr. Williams was a malingerer and a liar and a hypochondriac.

> .      .      .      .      .

> You think he's a liar, a malingerer, you think he's a money grubber. I don't think so

Williams claims that his comments were not improper argument because the Highway Department invited and provoked this argument when it stated during voir dire and its opening statement:

> In fact the testimony is basically going to be, except for doing some things for his father now and then, [Williams] hasn't hit a lick in ten years.

> .      .      .      .      .

> [Williams'] own doctor comes back and he testifies in his deposition on looking for

traits of a hypochondriac and the percent he puts on [Williams] is 99.99%.

. . . . .

Now not only that, the testimony will show that [Williams] own doctor testified that [Williams] propensity for hypochondria effects his ability to perceive and relate the truth and it'll effect his ability to exaggerate or color the facts or whatever.

. . . . .

Basically, [Williams'] father just gives [Williams] money as he needs it. Sitting in a recliner for six months watching T.V., sleeping and basically wearing out a recliner ... looking for other employment other than with his father, nothing. Not, for ten years.

. . . . .

Also, in any event, I believe that the evidence is going to be conclusive that this story they've told along about this big sign being imprinted is basically impossible.

To reverse a judgment on the basis of an improper jury argument, an appellant must prove:

1. Improper argument;
2. The argument was not invited;
3. The error was preserved by objection;
4. The argument was not curable by instruction, prompt withdrawal of the statement, or reprimand by the judge; and
5. The nature of the argument constituted harm.

*Standard Fire Insurance Company v. Reese,* 584 S.W.2d 835, 839–840 (Tex.1979). Reversal of the judgment can only occur when, after an evaluation of all the evidence from voir dire to jury argument, an appellant can prove that the probability that improper argument caused harm was greater than the probability that the verdict was proper. *Williams v. Lavender,* 797 S.W.2d 410 (Tex. App.—Fort Worth 1990, writ denied).

▇▇▇ In this case, the Highway Department clearly characterizes Williams as a hypochondriac, a malingerer, and a person of questionable character. We hold that Williams' statements in this regard were pro-

voked by the comments that were made by the Highway Department and thus, were not improper. We also note that the court sustained the Highway Department's objection and promptly instructed the jury to consider only the testimony that they heard as evidence. The court's instruction cured any potential harm caused by Williams' statements.

Next, the Highway Department complains that Williams' attorney was inappropriate when he stated:

I've got a name, a nickname for Mr. Nalle [the Highway Department's expert witness] that I've made and I call him 'Know It All Nalle.'

Nalle testified as the Highway Department's expert witness. Nalle stated that he was asked to investigate the scene of the accident nine years after the incident. Based on the evidence at the scene, Nalle concluded that:

(1) the mark on the highway was a rim mark;
(2) the signs were not required for a DOT transportation pothole crew;
(3) a sign in the center line of the highway is not necessarily improper; and
(4) a sign on the shoulder of a road could *not* have been blown on the highway.

Nalle also expressed an opinion about the speed of Williams' truck at the time of the accident and about the length of time it takes a tire to blow out and deflate. Williams argues that the arguments were a fair comment on the credibility of the Appellants' expert witness and did not constitute an improper jury argument. Williams reasons that he characterized Nalle as a "know it all" to the jury because Nalle had given opinions on a wide range of expertise.

▇▇▇ We hold that Williams' argument was not improper. Whether by cross-examination or advocacy, counsel can comment on the credibility of witnesses. Looking at the whole record and the number of opinions rendered by Mr. Nalle within various areas of expertise, Williams' comments did not constitute improper jury argument. Point eight is overruled.

Next, the Highway Department contends that the court erred when it submitted Ques-

tion 2 to the jury which asked the jury whether the Highway Department failed:

> (1) to adequately warn *or*,
>
> (2) to make the complained of condition reasonably safer:

The Highway Department argues that when the court used the disjunctive "or" instead of the conjunctive "and," it allowed the jury to find that the state was negligent in failing to make the condition reasonably safe, regardless of whether the jury might have felt that the Highway Department had provided an adequate warning for a person exercising ordinary care. We do not agree.

In special defect cases, the state has the duty to either warn of the unreasonably dangerous condition or to make the condition reasonably safe, but it is not required to do both. *Smith v. State*, 716 S.W.2d 177, 179 (Tex.App.—El Paso 1986, writ ref'd n.r.e.); *Prairie View A & M University v. Thomas*, 684 S.W.2d 169, 170 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). The issue that the court submitted to the jury was a correct statement of the law. Point nine is overruled.

In point ten, the Highway Department contends that the court erred when it did not consider the jury's notations and grant judgment in its favor based upon the notes written by the jury on the verdict form while they were deliberating. The Highway Department argues that the jury made notations on the verdict form that indicated that Williams had knowledge of the condition of the roadway; therefore, the Highway Department concludes that Williams failed to obtain the necessary findings pursuant to the charge and verdict which would support a judgment in favor of Williams. We do not agree.

A jury's notations in the margin of the verdict will not be considered on appeal because they reflect the jury's mental process and are not part of its verdict. *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 328 (Tex.1993). Point 10 is overruled.

In a cross-point, Williams contends that the court erred when it denied his recovery of pre-judgment interest on the $100,000 that the jury awarded to him. The Texas Tort Claims Act in effect at the time of the event giving rise to Williams's cause of action set a limit of liability under the Act at $100,000 per person.[1] In 1983, the Act was amended raising the state's liability to $250,000. The 1983 amendment specifically provided that a cause of action arising before the effective date of the Act would be governed by the law as it existed on the date that the Act or omission occurred. *Id.* at § 2. The 1985 Act repealed the statute without directly saving the provision applying the $100,000 limit to pre-September 1, 1983 causes of action. Therefore, the recodified version of the statute makes no mention of applying the $100,000 limit to pre-September 1, 1983, causes of action. Tex.Civ.Prac. & Rem.Code Ann. § 101.023 (Vernon 1992). However, the Code Construction Act, applies to the Texas Tort Claims Act. Tex.Civ.Prac. & Rem. Code Ann. § 101.001 *et seq.* (Vernon 1992). The Code Construction Act specifically states that a statute is presumed to be prospective in its operation unless expressly made retrospective. *See* Tex.Gov't Code Ann. § 311.022 (Vernon 1988).

Here, the acts giving rise to Williams's cause of action occurred on August 4, 1982. Williams's cause of action did not arise in February, 1993, when the case was finally tried before a jury. The prospective nature of the Texas Civil Practice and Remedies Code and the application of the Code Construction Act preclude application of the $250,000 limit to Williams's judgment. Therefore, we overrule Williams's cross-point.

The judgment of the trial court is **affirmed.**

---

**1.** Former Tex.Rev.Civ.Stat.Ann. art. 6252–19, sec. 3 (Vernon 1970), Act of May 22, 1969, 61st Leg.R.S. ch. 292, § 3, 1969 Tex.Gen.Laws 874, 875, *amended by* Act of June 19, 1983, 68th Leg.R.S. ch. 530, § 1, 1983 Tex.Gen.Laws 3084, 3084–85 (the 1983 amendment), *repealed by* Act of June 16, 1985, 68th Leg.R.S. ch. 959, § 9, 1985 Tex.Gen.Laws 3242, 3322 (the 1985 amendment) (recodified at Tex.Civ.Prac. & Rem.Code, § 101.023 (Vernon 1986)).