Ricky SIPES and Jamie Sipes, Appellants,

v.

The TEXAS DEPARTMENT OF TRANSPORTATION, Appellee.

No. 06–96–00105–CV.

Court of Appeals of Texas, Texarkana.

July 22, 1997.

Rehearing Overruled July 22, 1997.

**518**

Frank Supercinski, Longview, for appellants.

Michael Ratliff, Assistant Attorney General, Transportation Division, Austin, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

OPINION

GRANT, Justice.

Ricky and Jamie Sipes appeal from a directed verdict rendered in favor of the Texas Department of Transportation. The Sipeses base their premises liability claim upon the Texas Tort Claims Act.

The Sipeses complain that the trial court erred (1) in ruling as a matter of law that tall grass and weeds that obstruct a motorist's view of oncoming traffic constituted a regular premises defect and that the Sipeses failed to introduce probative evidence of all negligence elements, (2) in overruling the Sipeses' motions for instructed verdict and new trial that the vegetation constituted a nuisance, and (3) in refusing to admit relevant weather records of rainfall.

This claim arose on July 10, 1993 after Jamie Sipes stopped her car in the middle of a crossover area of a four-lane, divided highway in East Texas in her attempt to reach a store located across that highway. The median at the crossover was covered with tall grass and weeds. Without inching forward to look for oncoming traffic, Sipes slowly pulled out of the middle of the crossover and began to cross the highway. As she crossed the road, an oncoming car collided with her car. At trial, the Sipeses argued that the presence of the tall grass in the median proximately caused the collision because it obstructed her view of oncoming traffic. After presenting their case to a jury, the trial court denied the Sipeses' motions for an instructed verdict and a new trial. In their motions, the Sipeses asserted that they produced evidence that the road condition constituted a special defect actionable under the Texas Tort Claims Act or, alternatively, a regular defect and public nuisance. The court granted the State's motion for instructed verdict based on the Sipeses' failure to produce probative evidence of a regular premises defect.

In reviewing the granting of a directed or instructed verdict, we must determine whether there is any evidence of probative force to raise a fact issue on the material

questions presented.[1] We consider all the evidence in a light most favorable to the party against whom the verdict was instructed, disregard all contrary evidence and inferences, and give the losing party the benefit of all reasonable inferences that the evidence created.[2] If there is any conflicting evidence of probative value on any theory of recovery, an instructed verdict is improper and the case must be reversed and remanded for a jury determination of that issue.[3]

■ In their first point of error, the Sipeses contend that the tall vegetation growing in the median constituted a special defect, a premises defect exception within the Texas Tort Claims Act that could make the State liable.[4] Consideration of any tort claim against the State must begin with sovereign immunity. This immunity is waived under the Act, but only to the extent that liability is created by the Act.[5] Specifically, the Act provides that the State is liable for a "personal injury . . . caused by a condition or use of . . . real property if the governmental unit would, were it a private person, be liable to the claimant. . . ."[6] The Act's Section 101.022 goes on to limit liability when the claim involves a regular premises defect, but does not extend this liability protection to special premises defects.[7] Because the Sipeses' claim involves a condition of real property, our next inquiry is whether the premises defect is a special defect.

■ Whether a condition is a regular or special defect is a question of law.[8] The courts' definitions and classifications of regular and special defects involve statutory interpretation[9] and are considered on a case-by-case basis.[10] Although the Act states that special defects include "obstructions on highways, roads, or streets,"[11] courts have interpreted the statute's definition of a special defect as a condition presenting "an unexpected and unusual danger to ordinary users of roadways."[12] Additionally, a special defect is one that is "distinguished by some unusual quality" or "being other than the usual."[13] Conditions can only be special defects if they pose a threat to ordinary users of a roadway.[14] Courts have determined the following road and roadside conditions to be special defects:

(1) Some excavations or obstructions,[15] but not all;[16]

(2) Slick, muddy road conditions;[17]

1. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994).

2. *Id.*

3. *Id.*

4. Tex Civ. Prac. & Rem.Code Ann. § 101.022(b) (Vernon 1997).

5. *Dobbins v. Texas Turnpike Auth.,* 496 S.W.2d 744, 748 (Tex.Civ.App.-Texarkana 1973, writ ref'd n.r.e.).

6. Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (Vernon 1977).

7. Section 101.022 states the following:

(a) If a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.
(b) The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets, . . . .

8. *State v. Burris,* 877 S.W.2d 298, 299 (Tex. 1994).

9. *Id.*

10. *State v. Williams,* 932 S.W.2d 546, 550 (Tex. App.-Tyler 1995), *writ denied per curiam,* 940 S.W.2d 583 (Tex.1996).

11. Tex. Civ. Prac. & Rem.Code Ann. § 101.022(b).

12. *Burris,* 877 S.W.2d at 299.

13. *Williams,* 932 S.W.2d at 550.

14. *Barker v. City of Galveston,* 907 S.W.2d 879, 884 (Tex.App.–Houston [1st Dist.] 1995, writ denied).

15. Tex Civ Prac. & Rem.Code Ann. § 101.022(b); *Burris,* 877 S.W.2d at 299.

16. *Williams,* 932 S.W.2d at 550.

17. *State v. McBride,* 601 S.W.2d 552 (Tex.Civ. App.-Waco 1980, writ ref'd n.r.e.).

(3) Floodwaters two feet deep at low water crossings in predawn darkness,[18] and;

(4) A hole ten inches deep that spans most of the width of a road.[19]

Conversely, courts have held the following conditions on or adjacent to highways to be regular premises defects:

(1) An icy bridge when there is precipitation accompanied by near-freezing temperatures;[20]

(2) A severe depression in the highway where the asphalt part had sunk below the surface of the abutting concrete;[21]

(3) A piece of metal nine inches long, three inches wide, and less than one-quarter of an inch thick and lying on the shoulder of the road;[22]

(4) A fully operational motor vehicle, making an illegal movement or momentarily stopped on a highway,[23] and;

(5) An off-road culvert, even if negligently designed or camouflaged, if it poses no threat to ordinary users of a roadway.[24]

■ Once a defect has been classified as either regular or special, distinctions of duty and knowledge necessarily follow.[25] Where a *special* premises defect is at issue, the State's duty to a claimant is raised to that of an invitee. Invitee plaintiffs, which the Sipeses proclaim themselves to be, asserting a special defect can recover if the State *knew or reasonably should have known* of the dangerous condition.[26] Thus, for the grass and weeds to constitute a special defect, elevating the standard of care to that owed to an invitee, the vegetation must have been an unusual and unexpected danger to ordinary users of the highway of which the State knew or reasonably should have known.

■ In contrast, where a *regular* premises defect is at issue, the State owes a claimant the same duty as that owed by a private person to a licensee.[27] That duty requires that an owner not injure a licensee by willful, wanton, or grossly negligent conduct, and that the owner use ordinary care to either warn a licensee of, or make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not.[28] Unlike an invitee plaintiff, the licensee plaintiff must prove that he or she did not know of the condition. Therefore, because the Sipeses do not allege willful, wanton, or grossly negligent conduct, to recover as a licensee plaintiff on their alternative regular premises defect theory, the Sipeses must prove (1) that the State had *actual knowledge* of the dangerous condition[29] and (2) that the Sipeses had no knowledge of that condition.

■ The Sipeses contend that tall vegetation hiding dangers to ordinary users of roadways are special defects and obstructions as a matter of law, citing *Jezek v. City of Midland.*[30] *Jezek* also involved a motorist whose car was hit after he pulled out onto a roadway intersection to look for oncoming cars because he could not see past heavy vegetation. However, *Jezek* is distinguishable because it included undisputed evidence that the city had actual knowledge of the hazardous condition, including the knowledge

**18.** *Miranda v. State,* 591 S.W.2d 568, 568–69 (Tex.Civ.App.-El Paso 1979, no writ).

**19.** *Harris County v. Eaton,* 561 S.W.2d 245, 247 (Tex.Civ.App.-Houston [14th Dist.]), *aff'd,* 573 S.W.2d 177 (Tex.1978).

**20.** *State Dep't of Highways and Pub. Transp. v. Kitchen,* 867 S.W.2d 784, 786 (Tex.1993).

**21.** *Sutton v. State Highway Dep't,* 549 S.W.2d 59 (Tex.Civ.App.-Waco 1977, writ ref'd n.r.e.).

**22.** *Williams,* 932 S.W.2d at 550; *Department of Transp. v. Horrocks,* 841 S.W.2d 413 (Tex.App.– Dallas 1992), *rev'd on other grounds and remanded,* 852 S.W.2d 498 (Tex.1993).

**23.** *Burris,* 877 S.W.2d at 299.

**24.** *Stambaugh v. City of White Oak,* 894 S.W.2d 818, 820 (Tex.App.-Tyler 1994, no writ); *State Dep't of Highways v. Payne,* 838 S.W.2d 235, 239 (Tex.1992).

**25.** *See Payne,* 838 S.W.2d at 238.

**26.** *Morse v. State,* 905 S.W.2d 470, 476 (Tex. App.-Beaumont 1995, writ denied); *Williams,* 932 S.W.2d at 550.

**27.** Tex Civ. Prac. & Rem.Code Ann. § 101.022(a).

**28.** *Payne,* 838 S.W.2d at 239.

**29.** *Id.* at 237–41.

**30.** 605 S.W.2d 544, 546 (Tex.1980).

that there was a history of car accidents at that intersection.[31] The Sipeses did not present such evidence of actual knowledge of a dangerous condition. Further, the *Jezek* court did not address the issue of whether tall vegetation constituted a regular or special defect.[32] Instead, the court held that "where a city *knowingly* maintains an intersection right-of-way in a manner which dangerously obstructs the vision of motorists, ... they are under a duty to warn of the danger or ... make safe the defective condition."[33] From this language, we can infer that tall vegetation that obstructs a motorist's view of which the government is unaware is a regular premises defect. Additionally, the court in *Hamric v. Kansas City Southern Railway Company*,[34] which also involved a motorist who sued the state resulting from a car collision proximately caused by an obstruction of vegetation, applied a licensee analysis rather than an invitee analysis.[35]

The Texas Supreme Court's analysis in *State Department of Highways v. Kitchen*[36] is applicable to the present case. In *Kitchen*, the plaintiff sued the state and alleged that the accumulation of ice on a bridge was the proximate cause of his car accident, that the condition was either a regular or special defect, and that the state breached its duty to warn motorists of the dangerous condition. The Court found that the icy bridge was a regular premises defect because the state did not have prior actual knowledge that the condition was dangerous.[37] In its reasoning, the Court stated that road conditions that motorists can and should anticipate when the weather is conducive to such a condition is "neither unexpected nor unusual, but rather, entirely predictable."[38]

Similarly, in the present case, grass and weeds growing along an East Texas highway in July are neither unexpected nor unusual. Motorists can and should anticipate grass and weeds growing along a median when the weather is conducive to such a condition. At trial, Sipes testified several times that the grass in the median obstructed her view. She also testified that the reason she was driving to the store was to buy a cold drink for her husband, who was mowing grass and weeds in a field a short distance away. The open and obvious nature of the vegetation, of which Sipes testified she had actual knowledge, demonstrates the Sipeses' failure to fulfill the unexpected and unusual requirement for a special defect. Because the Sipeses' claim is not a special premises defect,[39] the State's duty to the Sipeses was that of a licensee.

 The Sipeses contend, alternatively, that the State is liable for a regular premises defect because the State breached its duty to use ordinary care to either warn of, or make reasonably safe, a dangerous condition of which the owner was aware and the licensee was not. To prevail, the Sipeses must prove that the State had actual knowledge [40]of a dangerous condition [41] and the Sipeses had no knowledge of that condition. An owner's knowledge that a condition merely exists should not be the basis for finding knowledge that the condition is dangerous.[42] The Sipeses presented evidence that the State inspected the grass periodically, but no evidence that previous accidents had occurred or any other knowledge that this was a dangerous condition. They also presented evidence from the driver of the vehicle that she observed the condition of the tall grass, and

---

31. *Jezek*, 605 S.W.2d at 545.

32. *See id.* (addressing "close proximity rule").

33. *Id.* at 548 (emphasis added).

34. 718 S.W.2d 916 (Tex.App.-Beaumont 1986, writ ref'd n.r.e.).

35. *Hamric*, 718 S.W.2d at 919.

36. *Kitchen*, 867 S.W.2d 784.

37. *Id.* at 786.

38. *Id.*

39. *Id.* at 786–87.

40. *See State v. Tennison*, 509 S.W.2d 560 (Tex.1974)(stating that licensor must have actual knowledge rather than constructive knowledge).

41. *Payne*, 838 S.W.2d at 237–41.

42. *Hastings v. De Leon*, 532 S.W.2d 147 (Tex.Civ. App.-San Antonio 1975, writ ref'd n.r.e.).

**522**

therefore, had the same knowledge of the existence of the grass as the State had. This is not a case where there has been alleged a hidden danger or latent defect of which the State had knowledge. The Sipeses contend that Jamie Sipes saw the grass but did not realize the dangerous condition. The Sipeses only evidence of the State's awareness was that the state inspector has also observed the grass.

The summary judgment proof shows that both parties were aware of the condition of the grass-although there is disagreement about the heighth of the grass. Even when considering the evidence in the light most favorable to the Sipeses, they have still failed to prove that the State had actual knowledge that the condition was dangerous. Because the Sipeses did not establish a prima facie showing of all the requisite elements to establish negligence under a regular premises defect theory, the instructed verdict was proper. The first point of error is overruled.

In their second point of error, the Sipeses contend that the tall weeds were inherently dangerous and constituted a public nuisance. They assert that public motorists have a right to an unobstructed view of oncoming traffic and that the State breached its duty to maintain its public highways when it did not mow the grass in the median so as to provide this unobstructed view. When classifying a nuisance within the exception to governmental immunity, courts have determined that the condition must constitute an unlawful invasion of property or the rights of others, an invasion of which must be inherent in the condition itself, beyond that arising merely from its negligent or improper use.[43] Tall vegetation growing on the side of a state highway is not in itself an inherently dangerous condition that exceeds mere negligent or improper use, and the Sipeses have not alleged that the action or inaction by the State transcended mere negligent or improper use.

Furthermore, this Court has held that if the nuisance is caused by the negligent performance of a governmental function, then the governmental entity is protected from liability because of governmental immunity.[44] Conversely, if a nuisance is created or maintained in the course of a *non-negligent* performance of a governmental function, the municipality is liable.[45] Non-negligence in this context means beyond negligence, as in gross negligence or an intentional act. By analogy, there is no question that the State Highway Department's mandatory duty under TEX.REV.CIV. STAT. ANN., art. 6674q–4[46] to provide for the efficient maintenance of the highways is a governmental function.[47] Because the Sipeses did not provide any evidence that the State's actions or inactions constituted a non-negligent, governmental function, their nuisance claim does not escape the protection of governmental immunity. The second point of error is overruled.

In their final point of error, the Sipeses contend that the trial court erred in excluding relevant rainfall records from the National Weather Service. Because of our determination that the Sipeses' failure to establish the requisite element of their own lack of knowledge of a dangerous condition is dispositive in this case, we do not address this evidentiary issue.

The judgment of the trial court is affirmed.

---

**43.** *Shade v. City of Dallas,* 819 S.W.2d 578, 581 (Tex.App.-Dallas 1991, no writ).

**44.** *City of Texarkana v. Taylor,* 490 S.W.2d 191, 194 (Tex.Civ.App.-Texarkana, 1972, writ ref'd n.r.e.); *see Bible Baptist Church v. City of Cleburne,* 848 S.W.2d 826, 829 (Tex.App.-Waco 1993, writ denied); *Shade,* 819 S.W.2d at 581.

**45.** *Shade,* 819 S.W.2d at 581; *Taylor,* 490 S.W.2d at 194.

**46.** TEX.REV.CIV. STAT. ANN. art. 6674q–4 (now found at TEX. TRANSP CODE ANN. §§ 224.031, 224.032 (Vernon 1997)).

**47.** *Stanford v. State Dep't of Highways,* 635 S.W.2d 581, 582 (Tex.App.-Dallas 1982, writ ref'd n.r.e.).