COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 TEXAS DEPARTMENT
 OF TRANSPORTATION/DON STIXROOD and PATRICIA STIXROOD, Individually and on
 behalf of THE ESTATE OF CHELSEA STIXROOD and on behalf of THE ESTATE OF
 JOSHUA STIXROOD,
  
                    Appellant/Cross-Appellee,
  
 v.
  
 DON STIXROOD and
 PATRICIA STIXROOD, Individually and on behalf of THE ESTATE OF CHELSEA
 STIXROOD and on behalf of THE ESTATE OF JOSHUA STIXROOD/TEXAS DEPARTMENT OF TRANSPORTATION,
  
                    Appellees/Cross-Appellants.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
  
 '
  
 '
  
 
 
  
 No. 08-01-00265-CV
  
 Appeal from the
  
 296th District Court
  
 of Collin County, Texas
  
 (TC# 296-782-97)
 
 




 

O P I N I O N

 

This is a cross-appeal stemming from
a wrongful death and survival action under the Texas Tort Claims Act.  We affirm.








On December 22, 1996, Chelsea and
Joshua Stixrood, the adult children of Don and Patricia Stixrood (AThe Stixroods@), were killed in a car accident a
few miles from the family=s home in Collin County, Texas.  The Stixroods sued the Texas Department of
Transportation (ATXDOT@) alleging that a muddy condition on the road on which Joshua
and Chelsea were traveling was the cause of the accident.  A verdict for $28,030,755.66 was entered
against TXDOT after a five-day jury trial in April 2001.  The trial court remitted these damages to
$250,000 plus post-judgment interest.

TXDOT here appeals the remitted
judgment alleging it is not supported by legally sufficient evidence and is the
result of charge error.  The Stixroods
cross-appealed alleging the trial court erred in remitting the judgment to
$250,000, contending instead that a judgment of $500,000 should have been
entered to include mental anguish damages for both Don and Patricia Stixrood.

Facts

The evening of December 21, 1996
began with several young friends at the Stixroods= home.  Sean Battenfield was a friend of Joshua and
was dating Chelsea.  Battenfield, Joshua,
Chelsea, and another friend, Chris Abbott, drank a few beers over the course of
four hours.  At around 2 a.m., they
decided to go drag racing.  Both
Battenfield and Joshua had cars that were capable of racing and had done so
before.  In Battenfield=s opinion, neither he nor Joshua was
intoxicated at the time they left the house. 
Joshua=s autopsy report revealed a alcohol
blood serum of .06 and a vitreous fluid reading of .08.








The group used State Highway 5
northbound to reach a racing spot.  
Battenfield does not remember seeing a lot of mud on the northbound side
of Highway 5.  They decided not to race,
however, because the roads were wet and the road surface would not provide
enough tire traction for racing.

Returning to the Stixrood house, the
group used Highway 5 southbound. 
Battenfield and Abbott were in one car, Joshua and Chelsea in the
other.  Battenfield was in the left lane.  Joshua followed behind Battenfield in the right
lane.  Battenfield estimated his speed
between 65 and 75.  Joshua never passed
Battenfield.

Battenfield suddenly saw Joshua=s car leave the road in his rear view
mirror.  Battenfield stopped the
car.  He and Abbott ran back down the
road to see what had happened.  They
discovered Joshua=s badly mangled vehicle in the creek that ran below Highway
5.  Both waded into the creek and while
Abbott lay across the front of Joshua=s car and held Chelsea=s head above water, Battenfield ran
back to his car to call 911. 
Approximately ten minutes had elapsed from the time they left the
Stixroods= house until the time of the
accident.  Joshua was declared dead at
the scene.  Chelsea survived for four
days before dying of injuries sustained in the crash.

Several witnesses testified that
Joshua was an experienced driver who had driven safely on roads with icy, wet,
or snowy conditions.  The testimony
concerning Joshua=s speed at the time of the accident was highly disputed.  Estimates ranged from 65 to 97 mph.  It was established, however, that the police
calculation of 97.10 mph was probably incorrect because it assumed dry
conditions on the roadway.








Muddy conditions were common on
Highway 5 where the accident occurred, caused by truck traffic to a landfill
maintained by the North Texas Municipal Water District.  TXDOT=s area engineer, William C. Lovil,
Jr., testified that muddy conditions on Highway 5 were common because of the
truck traffic in and out of the water district landfill.  He further testified that the road was not
designed to deal with the muddy conditions created by the landfill and that the
mud created a hazardous condition.  In
the past, TXDOT crews had been sent out to clean up mud and debris on the road.

Plaintiffs offered reports of eight
similar accidents.  Both TXDOT and the
North Texas Municipal Water District had reports from the public for the two
prior years complaining that the stretch of road in question was prone to dangerous
muddy conditions.  Less than two months
before the accident, TXDOT=s maintenance manager acknowledged in writing that the muddy
conditions could get quite bad on that stretch of road.








David Hall, a traffic engineering
expert, testified on behalf of plaintiff that mud on the highway was the
ultimate cause of the accident, as it caused Joshua=s car to spin out of control.  The police department=s accident reconstructionist
testified to the contrary, that the mud could not have been a major factor in
the accident because Joshua=s tires left rubber skid marks on the road surface, a fact
which indicated that Joshua=s speed was great enough for his tires to get traction with
the road surface.  Hall testified that
there should have been signs to warn of the slippery road condition.  Lovil testified that he had the authority to
erect warning signs without getting permission from Austin.  The cost for erecting such a sign was
$206.50.

Over TXDOT=s objection, the trial court
submitted the case on a special defect charge. 
The jury returned a verdict of $28 million.  It apportioned 85 percent of the negligence
for the accident to Joshua, 15 percent to the State, and 0 percent to Chelsea.

On post-verdict motion it was
undisputed that damages awarded pursuant to the Texas Tort Claims Act are
capped at $250,000 per person and $500,000 per occurrence.  The State argued the trial court should enter
a take-nothing judgment pursuant to the motion for judgment notwithstanding the
verdict.  The Stixroods argued the
verdict should be remitted to $500,000 to include $250,000 for Chelsea and
$250,000 for Don and Patricia Stixrood for their mental pain and anguish
connected to the death of their daughter. 
The trial court remitted the judgment to $250,000 for Chelsea Stixrood.  Both sides timely appealed.

The
special defect theory was correctly submitted to the jury

In TXDOT=s first issue, it urges that the
trial court erred in submitting the case under a special defect theory, and
alternatively that there was not legally sufficient evidence to support the
jury=s verdict under that theory. We
disagree.








Generally, a governmental unit, in
this case TXDOT, enjoys sovereign immunity from suit and may be sued for
negligence only if liability arises under the Texas Tort Claims Act (ATTCA@). 
See Tex. Civ. Prac. &
Rem. Code Ann. ' 101.025 (Vernon 1997). 
Therefore, sovereign immunity remains intact unless a plaintiff proves
the existence and violation of a legal duty sufficient to impose liability
under the TTCA.  See City of
Denton v. Page, 701 S.W.2d 831, 834 (Tex. 1986).

The
TTCA defines those duties as follows:

 

(a) If a claim arises from a premise defect, the
governmental unit owes to the claimant only the duty that a private person owes
to a licensee on private property, unless the claimant  pays for the use of the premises. 

(b) The limitation of duty in this section does not
apply to the duty to warn of special defects such as excavations or
obstructions on highways, roads, or streets or to the duty to warn of the
absence, condition, or malfunction of traffic signs, signals, or warning
devices as is required by Section 101.060.

 

Tex.
Civ. Prac. & Rem. Code  Ann. ' 101.022 (Vernon 1997).

 








Thus, to establish liability for a
premise defect, a plaintiff must prove that a condition of the premises created
an unreasonable risk of harm, that the owner actually knew of the condition,
that plaintiff did not actually know of the condition, that the owner failed to
exercise ordinary care to protect plaintiff from danger, and that the owner=s failure was a proximate cause of
injury.  State Dep=t of Highways & Public Transp. v.
Payne, 838 S.W.2d
235, 237 (Tex. 1992); State v. Tennison, 509 S.W.2d 560, 561 (Tex.
1974).    If the condition complained of
constitutes a special defect within the meaning of section 101.022(b), however,
the claimant is owed the same duty to warn as that owed to an invitee by a
private landowner.  Payne, 838
S.W.2d at 237; Harris County v. Eaton, 573 S.W.2d 177, 180 (Tex.
1978).  To establish liability for a
special defect, plaintiff must prove that a condition of the premise created an
unreasonable risk of harm to the invitee, that the owner knew or reasonably
should have known of the condition, that the owner failed to exercise ordinary
care to protect plaintiff from danger, and that the owner=s failure was a proximate cause of
injury.  Payne, 838 S.W.2d at 237.

Under a special defect theory, the
plaintiff need not prove that the State actually knew of the dangerous
condition and that plaintiff did not. 
Stated another way, if the governmental entity was aware of a dangerous
condition or could have discovered it upon the exercise of reasonable
diligence, then the State owes the invitee the duty to either warn of the
condition or to take steps to make the condition reasonably safe.  Corbin v. City of Keller, 1 S.W.3d
743, 744-47  (Tex. App.--Fort Worth 1999,
pet. denied).

Whether a condition is a premise
defect or a special defect under the Act is a question of law for the court to
decide.  City of Grapevine v. Roberts,
946 S.W.2d 841, 843 (Tex. 1997); Payne, 838 S.W.2d at 238.  Moreover, the classification of premise or
special defect involves statutory construction and is done on a case‑by‑case
basis.  See Roberts, 946 S.W.2d at
843 (examples of special defects stated in statute are not exclusive and such
defects should be construed to include defects of same kind or class as those
mentioned in statute); State v. Burris, 877 S.W.2d 298, 299 (Tex. 1994);
 State v. Williams, 932 S.W.2d
546, 550 (Tex. App.‑‑Tyler 1995), writ denied, 940 S.W.2d
583 (Tex. 1996).

Here, TXDOT contends that the test
for whether a condition constitutes a special defect requires plaintiff prove
the condition is not just unreasonably dangerous but is instead Aextraordinarily@ dangerous.  We find no support for this assertion.








The Supreme Court has consistently
interpreted Aexcavation@ and Aobstruction@ to mean conditions that present Aan unexpected and unusual danger to
ordinary users of roadways.@  State v. Rodriguez,
985 S.W.2d 83, 85 (Tex. 1999); State Dep't of Highways & Pub. Transp. v.
Kitchen, 867 S.W.2d 784, 786 (Tex. 1993). 
As the Rodriguez court stated: 
ASpecial defects unexpectedly and
physically impair a car=s ability to travel on the road.@ 
Rodriguez, 985 S.W.2d at 85. 
Some examples of conditions found to be special defects include metal
signs lying on the roadway, slick and muddy conditions on the road resulting
from a state-run excavation, flood waters over a state highway, and a large
pothole.  See State v. Williams, 932
S.W.2d 546, 550 (Tex. App.--Tyler 1995, writ denied) (metal sign); State v.
McBride, 601 S.W.2d 552, 558 (Tex. Civ. App.--Waco 1980, writ ref=d n.r.e.) (muddy condition on
roadway); Miranda v. State, 591 S.W.2d 568, 570 (Tex. Civ. App.--El Paso
1979, no writ) (flood waters); Harris County v. Eaton, 561 S.W.2d 245,
247 (Tex. Civ. App.--Houston [14th Dist.]), aff=d, 573 S.W.2d 177 (Tex. 1978) (ten-inch deep pothole
spanning roadway).  In this case, the
State=s and the Stixroods= witnesses testified that the mud
should not have been on the road and that it 
sometimes posed a dangerous condition to drivers on Highway 5.  Stated another way, it was unusual that the
mud became dangerous enough to cause an accident.  We thus believe the muddy condition could
have been an obstruction within the meaning of section 101.022(b).








The more troubling question is
whether that obstruction was unexpected. 
The evidence showed that Joshua=s skid began on a straight stretch of
road.  He was following close enough
behind Battenfield in the right lane that he was in Battenfield=s blind spot. Battenfield testified
he was going no more than 70 miles an hour in the left lane.  The two cars had previously driven over the
northbound lanes of Highway 5 without incident.   Joshua presumably saw Battenfield=s car pass without incident over the
stretch of road on which Joshua began his skid. 
Battenfield testified that Joshua=s disappearance from the roadway was
sudden.  We find there was legally
sufficient evidence to establish the muddy condition on Highway 5 presented Aan unexpected and unusual danger@ to Joshua and his passenger.  Rodriguez, 985 S.W.2d at 85.  The trial court therefore did not err in
submitting the case to the jury on a special defect theory.  TXDOT=s first issue is overruled.

The
Premise Defect Theory

In TXDOT=s second issue, it claims the
Stixroods= case also fails for lack of legally
sufficient evidence under a premise defect theory.  As a corollary to its second issue, the State
also contends we must reverse and render judgment because the jury failed to
make findings essential to recovery on a premise defect theory.  See Payne, 838 S.W.2d at 241.  Having held that the trial court did not
commit reversible error by submitting the case to the jury under a special
defect theory, we need not reach these questions.  TXDOT=s Issue Two is overruled.








Damages
capped under the TTCA

In a single point, the Stixroods seek
modification of the trial court=s judgment. Specifically, they request an additional $250,000
of the $28.4 million jury verdict to compensate Don and Patricia Stixrood for
mental anguish sustained as a result of Chelsea=s death.   There is no greater loss for a parent than
the loss of a child.  That the Stixroods
suffered the loss of two of their children within four days= time is a terrible tragedy.  Neither we nor TXDOT dispute that their
mental anguish is a legitimate element of damages that would otherwise be a
recoverable were this case not against the State.  See City of Denton v. Page, 701 S.W.2d
831, 835 (Tex. 1986).

Damage awards under the Texas Tort
Claims Act, however, are capped at $250,000 per person and $500,000 per
occurrence.  The cap provision reads:

(a)       Liability
of the state government under this chapter is limited to money damages in a
maximum amount of $250,000 for each person and $500,000 for each single
occurrence for bodily injury or death . . . .

 








Tex. Civ. Prac. & Rem. Code Ann.
' 101.023(a) (Vernon 1997 & Supp.
2003).  As the Stixroods correctly
concede, the term Aper person@ in the TTCA has historically been interpreted narrowly to
mean only the person who was killed or injured in the accident caused by the
State=s negligence.  Texas Dep=t of Transportation v. Ramming, 861 S.W.2d 460, 467 (Tex.
App.--Houston [14th Dist.] 1993, writ denied); see City of Austin v. Cooksey,
570 S.W.2d 386, 388 (Tex. 1978); Harris Cty. Hosp. Dist. v. Estrada, 872
S.W.2d 759, 765 (Tex. App.--Houston [1st Dist.] 1993, writ denied) (only
permitting  recovery of decedent=s mental anguish damages in wrongful
death case brought pursuant to TTCA).

Other Texas courts have examined this
issue by construing the phrase Abodily injury@ to hold that Amental anguish resulting from the
loss of a loved one is not the basis for a separate cause of action, but is . .
. an element of damage flowing from the death, and is derivative@ of the physical injuries sustained
by the decedent.  Hermann Hosp. v.
Martinez, 990 S.W.2d 476, 479 (Tex. App.--Houston [14th Dist.] 1999, pet.
denied); Harris Cty. v. White, 823 S.W.2d 385, 388 (Tex. App.--Texarkana
1992, no writ); see Rosenzweig v. Dallas Area Rapid Transit, 841 S.W.2d
897, 898 (Tex. App.--Dallas 1992, writ denied) (derivative claims of spouse for
loss of consortium and household services do not constitute bodily injury to
allow TTCA recovery under Aper person@ provision).

Only one exception to this
restrictive interpretation of the TTCA exists--the bystander rule.  It provides that a plaintiff may recover for
mental anguish damages sustained when Ahe witnesses the injury or death of a
loved one and thus suffers his own, personal injury in the form of shock and
mental anguish.@  Hermann Hosp.,
990 S.W.2d at 479-80.  To recover under
this theory the bystander must be located at or near the scene of the accident,
must sustain his mental injury from the direct emotional impact of the sensory
and contemporaneous observance of the accident, and must be closely related to
the victim.  Edinburg Hosp. Authority
v. Trevino, 941 S.W.2d 76, 80 (Tex. 1997).








The Stixroods ask us to find they are
entitled to bystander status because Don visited the scene the morning after
the accident and because both parents endured a three-day bedside vigil before
Chelsea died.  Unfortunately, such
evidence is insufficient to imply such status. 
Ramming, 861 S.W.2d at 467. 
The Stixroods cannot be considered bystanders in this case to permit
recovery of mental anguish damages under the TTCA  because neither parent was in close physical
proximity to the accident, nor were they present at the time of the
accident.  Compare with City of Austin
v. Davis, 693 S.W.2d 31, 33-34 (Tex. App.--Austin 1985, writ ref=d n.r.e.) (father=s discovery of son=s body many hours after accident
rendered his experience an integral part of the accident such that recovery for
his mental anguish damages under bystander theory permissible).  The Stixroods= point is therefore overruled.

Conclusion

The trial court=s judgment is affirmed.

 

SUSAN
LARSEN, Justice

December 12, 2002

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

 

(Do Not Publish)