**STATE of Missouri, ex rel., WOLFHOLE, INC., Appellant,**

v.

**SCOTT COUNTY SOIL AND WATER CONSERVATION DISTRICT, Respondent.**

**No. 64082.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

July 12, 1994.

John L. Oliver, Jr., J. Michael Ponder, Cape Girardeau, for appellant.

Richard S. Brownlee, II, Jefferson City, for respondent.

CARL R. GAERTNER, Presiding Judge.

Relator, Wolfhole, Inc., a Missouri corporation, appeals from the denial of its petition for a writ of mandamus against the Scott County Soil and Water Conservation District (District). Wolfhole sought a writ ordering the District to approve its application for reimbursement under the Wildlife Habitat Improvement Program. The Circuit Court of Cape Girardeau County denied Wolfhole's petition. We affirm.

In general, we review court-tried cases to determine whether there is substantial evidence to support the trial court's judgment, whether the judgment was against the weight of the evidence, whether the law was declared erroneously or whether the law was erroneously applied. *Sheldon v. Board of Trustees of Pol. Ret. Sys.*, 779 S.W.2d 553, 554 (Mo.banc 1989). However, in the present action, the parties agreed to submit the case upon a stipulation of facts. When a case is tried on a stipulation of facts not involving the resolution by the trial court of conflicting testimony, the only question before this court is whether the trial court drew the proper legal conclusions from the stipulated facts. *Sheldon* at 554.

In 1985 a federal program entitled the Conservation Reserve Program (CRP) was developed. CRP's purpose was to preserve soil on highly erodible crop land by encouraging landowners to replace agricultural production with soil conservation practices. A federal agency, the Agricultural Stabilization and Conservation Services (ASCS), encouraged landowners to implement such practices by sharing the costs of these practices with the landowner. On May 16, 1988, Wolfhole applied to participate in a CRP plan in Scott County, Missouri. Pursuant to this plan, Wolfhole discontinued agricultural production on a portion of its land and replaced those crops with a tree farm. ASCS reimbursed Wolfhole in the sum of $52,295.25. This sum included the costs of the original ground preparation, planting, and replanting due to attrition of trees.

In 1987 a state program, the Wildlife Habitat Improvement Program, was initiated. This program was part of the state's cost-

share program, the state program in which landowners and local soil and water conservation districts share the costs of conservation practices. The purpose of the Wildlife Habitat Improvement Program was to encourage the installation of conservation practices that had fish, forestry and wildlife benefits in addition to erosion control benefits. Many of the approved practices under CRP not only conserved the soil, but also aided in protecting wildlife. In this sense, CRP and the Wildlife Habitat Improvement Program overlapped. Furthermore, under the Wildlife Habitat Improvement Program, the local soil and water conservation districts would also share the costs of conservation practices with the landowners who were willing to implement such practices; in this way, eligible landowners could share the costs of certain conservation practices with both ASCS and their local soil and water conservation district.

On October 12, 1988, Donald Wolf, Director of the State Soil and Water Conservation Program, issued a memorandum concerning the Wildlife Habitat Improvement Program to all local soil and water conservation districts. The memorandum read in pertinent part:

I. *Background*

The Wildlife Habitat Improvement Program is a cooperative effort between the Missouri Soil and Water Conservation Districts, the Department of Conservation, the Department of Natural Resources ... and ASCS. It provides an additional financial benefit in addition to that received from ASCS to landowners who put their CRP acres into eligible practices.

Eligible landowners may receive an additional 25 percent of the county average costs for eligible seedings for CRP fields....

III. *Eligibility Requirements*

The financial benefits of this program will be available to CRP landowners in counties where the following conditions exist:

1. The [local soil and water conservation district] has agreed to participate in the program.

2. The ASCS in that county is paying 50 percent of the county average costs.

3. The sign-up on the ACP–25 is only for eligible practices after March 12, 1987.

Under the Wildlife Habitat Improvement Program, Wolfhole applied for an additional 25 percent from the Scott County Soil and Water Conservation District (District) for the costs of its tree farm. The tree farm was an eligible practice because, not only did it conserve soil, it provided wildlife benefits. Wolfhole maintained that it met all the requirements outlined in the above memorandum. The District was participating in the program, and ASCS was paying 50 percent of costs on eligible CRP practices in Scott County.

The District denied Wolfhole's application on the grounds that Wolfhole had undertaken no additional planting or seeding beyond its original tree planting under the CRP plan. Therefore, the District concluded that Wolfhole did not qualify for the additional 25 percent. Wolfhole then sought a writ of mandamus ordering the District to pay the additional 25 percent. The writ was denied and this appeal ensued.

 Courts have discretion to issue a writ of mandamus in cases where ministerial duties sought to be coerced are simple and definite, arising under conditions admitted or proved and imposed by law. *State ex rel. Twenty–Second Judicial Circuit v. Jones*, 823 S.W.2d 471, 472 (Mo.banc 1992). Mandamus may not be utilized to compel the performance of a discretionary act. *State ex rel. Childress v. Anderson*, 865 S.W.2d 384, 386 (Mo.App.1993). Wolfhole argues the District's approval of its application was merely a ministerial act. Wolfhole maintains that once it met the requirements outlined in the above memorandum the District had no discretion to deny its application. We disagree.

The District denied Wolfhole's application due to the District's reliance on a state regulation in effect at that time, a regulation promulgated by the State Soil and Water Districts Commission (Commission). The Commission is a statutory body created pursuant to § 278.080 RSMo 1986. The Commission's purpose is to administer the local soil and water conservation districts. *See*

§ 278.080.1 RSMo 1986. In accordance with this role, the Commission promulgated a rule detailing how the local soil and water conservation districts should administer the state's cost-share program. The relevant portion of this regulation provided:

> The board of supervisors [of each local soil and water conservation district] shall review such cost-share assistance application and any amendments thereto and shall approve or disapprove each such application or amendment.... *The board shall not approve any application for cost-share assistance on which the construction or implementation of projects or practices has begun.*

10 CSR 70–5.050(2) (emphasis added).[1]

Not only had Wolfhole begun construction and implementation of its tree farm, it had completed the project. Since Wolfhole does not dispute this fact, the regulation clearly required the District to deny Wolfhole's application. In response, Wolfhole claims that this regulation lacks statutory authority. Wolfhole argues that the regulation is somehow inconsistent with both the Commission's and the District's statutory roles.

An administrative agency has no more authority than is granted by statute. *AT & T v. Wallemann,* 827 S.W.2d 217, 221 (Mo.App.1992). However, this authority includes not only express power but also those powers necessarily implied from the language of the statute. *State ex rel. Twenty–Second Judicial Circuit v. Jones,* 823 S.W.2d at 476. We believe both the Commission and the District operated within the realm of their statutory authority.

Review of the Soil and Water Conservation Districts Law, §§ 278.060 to 278.155 RSMo 1986, completely refutes Wolfhole's argument. The authority and duties of the State Soil and Water Districts Commission are outlined in § 278.080 RSMo 1986. This statute empowers the Commission:

> (6) ... to determine within the limits of available funds or other resources the amount or kind of state aid to be used for saving of soil and water in any soil and water conservation district ... [and]
>
> (8) To promulgate such rules and regulations and administrative guidelines necessary to effectively administer a state-funded soil and water conservation cost-share program.

This statute expressly empowers the Commission to promulgate the type of rule on which the District relied. Moreover, the District was required by its statute to follow the regulation. The local soil and water conservation districts are directed:

> (2) To cooperate or enter into agreements with, and to aid within the limits of appropriations duly made available to it by law, ... any land representative within that soil and water district, in the saving of the soil and water within that district; and *all such cooperations or agreements shall be in accord with the policies of the state soil and water districts commission.*

§ 278.120.2 RSMo 1986 (emphasis added). The actions of the District in denying Wolfhole's application and relying on a regulation duly promulgated by the Commission were in accordance with this statutory scheme.

The Commission was authorized by statute to promulgate 10 CSR 70–5.050(2). That rule clearly denies Wolfhole access to cost-share funds under the Wildlife Habitat Improvement Plan for its CRP tree farm. The Scott County Soil and Water Conservation District was required by statute to follow the dictates of the Commission's regulation and deny Wolfhole's application. Therefore, the trial court properly denied Wolfhole's petition for mandamus.

Affirmed.

SIMON and CRANE, JJ., concur.

---

1. The regulation has been amended since the time of Wolfhole's application. As amended, the regulation is even more clear on the local soil and water conservation districts' powers in rejecting cost-share applications. It also provides for an administrative appeal process. *See* 10 CSR 70–5.050(9).