Joseph A. BELLINO, III, Appellant

v.

**COMMISSION FOR LAWYER DISCIPLINE, Appellee.**

No. 05–02–01881–CV.

Court of Appeals of Texas, Dallas.

Dec. 29, 2003.

Rehearing Overruled Feb. 4, 2004.

Thomas P. Earls, Dallas, for Appellant.

Joseph A. Bellino, III, Dallas, pro se.

Deanne Claire, Dallas, Linda A. Acevedo, Office of Chief Disciplinary Counsel, Austin, and Dawn Miller, Dallas, for Appellee.

Before WHITTINGTON, JAMES, and O'NEILL.

## OPINION

Opinion By Justice O'NEILL.

Joseph A. Bellino, III, appeals the trial court's order disbarring him. He asserts legal and factual insufficiency and charge error. He also asserts that the trial court erred in allowing belatedly disclosed witnesses to testify and that the trial court erred in its handling of questions from the jury during deliberations. We affirm.

## Facts

The Commission for Lawyer Discipline (Commission) brought an action against Bellino in the district court, based on a number of complaints against Bellino. After the jury found that Bellino had violated numerous rules of professional conduct,[1] the court awarded restitution to various complainants and judgment of disbarment, finding that "the proper discipline of the Respondent for each occurrence of professional misconduct is DISBARMENT."

The Commission presented facts from four situations in which it alleged Bellino violated multiple rules of professional conduct. The summarized facts here are those the Commission asserts are supported by the evidence, most of which Bellino disputes. In the first situation, Rochelle Johns–Ladd sought assistance from Bellino after she and her four-year-old son Adam sustained injuries in a car accident. Rochelle testified Bellino settled her and Adam's claims without her consent and that, without any authorization from her, he put Adam's money in a business in which he was the sole owner. In the second fact situation, Juan Villanueva hired Bellino to represent him after he was injured in an automobile accident. Two years later, he discovered through a different attorney that Bellino had earlier settled his case. In the third situation, restaurant owner Linda Lok and her manager, Wing Wong, hired Bellino to obtain green cards for three cooks at the restaurant. They testify Bellino agreed, as he had advertised, that he would obtain the green cards within a year or he would return the fees paid. Four years later, Bellino referred the case to another attorney. Bellino never obtained the green cards and never returned any fees. Concerning the fourth situation, Fahira Delic testified that Bellino settled her car-accident claim without her consent and that he was delinquent in paying her what was due to her under the settlement. Her chiropractor, Dr. Bendiks, also filed a complaint when, contrary to Bellino's letter of protection, Bellino refused to pay Dr. Bendiks' full claim for services rendered to Delic.

## Commission's Witnesses Allowed to Testify

Bellino argues that the trial court erred in permitting the Commission's witnesses to testify over his objection that the Commission failed to disclose its witnesses within 30 days before trial. *See* Tex.R. Civ. P. 193.5(b). The Commission does not dispute that it failed formally to disclose its witnesses within the 30–day time frame, but asserts that Bellino was not unfairly surprised by the identity of the witnesses. *See* Tex.R. Civ. P. 193.6(a)(2).

A party who fails timely to respond to a discovery request, or to supplement its response, shall not be entitled to offer testimony of a witness having knowledge of a discoverable matter unless the trial court (1) finds good cause sufficient to require admission, or (2) determines the other party will not be unfairly surprised or prejudiced. Tex.R. Civ. P. 193.6(a). The party offering the witness has the burden to establish good cause or lack of surprise. Tex.R. Civ. P. 193.6(b). The trial court has discretion to determine whether the offering party met this burden. *Dolenz v. The State Bar of Texas*, 72 S.W.3d 385, 387 (Tex.App.-Dallas 2001, no

---

1. The rules governing the discipline of lawyers consist of the Texas Disciplinary Rules of Professional Conduct, which define proper conduct for the purpose of professional discipline. Tex. Disciplinary R. Prof'l Conduct 1.01 9.01, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G. app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9).

pet.) (citing *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex.1992)).

■ Implicit in the trial court's permitting the Commission's witnesses to testify is a determination that there was good cause or no unfair surprise in the Commission's late disclosure of witnesses. *See Capital Metro. Transp. Author./Cent. of Tenn. Ry. and Navigation Co. v. Cent. of Tenn. Ry. and Navigation Co.*, 114 S.W.3d 573, 583 (Tex.App.-Austin 2003, pet. filed) (finding of unfair surprise implicit in court's ruling). The record shows that the Commission formally disclosed its witnesses to Bellino on August 1, 2002, supplemented its response on August 5, and trial commenced on August 19, 2002. Most of the witnesses on the Commission's list were the complainants themselves, *e.g.,* Rochelle Johns–Ladd, Linda Lok, Wing Wong, Juan Villanueva, and Delic Fahira.[2] Against that background, we note the considerable process given a respondent attorney before the Commission can file a matter such as this in district court.[3] The rules governing disciplinary proceedings require that the respondent lawyer be given an opportunity to respond to a complaint; both the respondent and complainants are invited to appear at a hearing before the investigatory panel. Tex.R. Disciplinary P. 2.09; 2.10.A; 2.11. Accordingly, we conclude the record supports a finding of lack of unfair surprise and that the trial court did not abuse its discretion in permitting the Commission's witnesses to testify.

### The Jury Charge

The jury charge contained forty-two separate questions. Bellino argues that the charge was in error because the questions were not in "broad form," and numerous questions were the functional equivalent of each other. *See Holmes v. J.C. Penney Co.*, 382 S.W.2d 472, 473 (Tex. 1964) (discussing prohibited use of multiple questions that raise essentially the same fact question). He asserts harmful error, arguing that the charge as a whole was so heavily skewed in the Commission's favor as to guarantee a verdict against him, thus constituting harmful error.

■ The goal of the charge is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly, and completely. *Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661, 664 (Tex.1999). Toward that end, the trial judge is accorded broad discretion so long as the charge is legally correct. *Id.* While trial courts should obtain fact findings on all theories pleaded and supported by evidence, a trial court is not required to, and should not, confuse the jury by submitting differently worded questions that call for the same factual finding. *Id.* at 665–66. Rule 277 of the rules of civil procedure requires that in all jury cases, "the court shall, whenever feasible, submit the cause upon broad-form questions." Tex.R. Civ. P. 277. But that rule "is not absolute; rather, it mandates broad-form submission 'whenever feasible.'" *Westgate, Ltd. v. State,* 843 S.W.2d 448, 455 n. 6 (Tex.1992).

---

**2.** The Commission also disclosed, and called as witnesses, Ms. Johns–Ladd's mother, Dr. Bendick's office manager, and an office manager in a clinic that served Villanueva. The Commission also called Bill Reese, a State Bar investigator who had been assigned to assist with the complaints against Bellino. He testified to facts about the grievance committee's issuance of subpoenas to Bellino and Bellino's failure to produce the requested documents.

**3.** The procedural rules governing the disciplinary process are found in the Texas Rules of Disciplinary Procedure. Tex.R. Disciplinary P. 1.01–15.13, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G. app. A 1 (Vernon 1998).

The Texas Disciplinary Rules of Professional Conduct are treated like statutes. *O'Quinn v. State Bar of Texas,* 763 S.W.2d 397, 399 (Tex.1988). Generally, the jury charge for a statutory cause of action should track the language of the provision as closely as possible. *Borneman v. Steak & Ale of Tex., Inc.,* 22 S.W.3d 411, 413 (Tex.2000).

Our review of the jury charge indicates that, contrary to Bellino's assertion, there are no questions that ask the jury to answer essentially the same fact issue. Rather, each question isolates a single fact issue concerning a particular client (or complainant) and tracks the language of a disciplinary rule that Bellino allegedly violated. Thus, the charge followed proper treatment for statute-based violations, and the questions were not duplicative or confusing. Accordingly, the trial court did not abuse its discretion in submitting the charge.

### Legal and Factual Sufficiency

Bellino asserts there is no evidence to support the findings pertinent to the case concerning Rochelle Johns–Ladd and Adam Johns and that concerning Juan Villanueva. He challenges both legal and factual sufficiency with respect to the case of Linda Lok and Wing Wong and the case involving Fahira Delic and Dr. Bendiks. He also asserts the evidence is factually insufficient to support violations of the rules declaring as misconduct a knowing failure to respond, or failure timely to respond, to a lawful request for information from a disciplinary authority. *See* Tex. Disciplinary R. Prof'l Conduct 8.01(b), *see* rule 8.04(a)(8).

We note initially that in its brief to this Court the Commission concedes there is insufficient evidence to support the affirmative answers to twelve of the forty-two questions presented to the jury. Accordingly, our analysis of legal and factual sufficiency excludes these questions and answers.

### Standard of Review

When the appellant is challenging the legal sufficiency of the evidence to support a finding on which it did not have the burden of proof at trial, the appellant must demonstrate on appeal that no evidence exists to support the adverse finding. *Casino Magic Corp. v. King,* 43 S.W.3d 14, 19 (Tex.App.-Dallas 2001, pet. denied) (citing *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983)). The appellate court will sustain a no-evidence point of error when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner,* 106 S.W.3d 724, 727 (Tex.2003). We look to see whether any record evidence supports the challenged finding. *Casino Magic,* 43 S.W.3d at 19. Anything more than a scintilla of evidence is legally sufficient to support the trial court's finding. *Id.*

In contrast, when an appellant challenges the factual sufficiency of the evidence on an issue on which it did not have the burden of proof, the appellant must demonstrate the evidence is insufficient to support the adverse finding. *Id.* On this point, we consider, weigh, and examine all the evidence presented at trial. *Id.* (citing *Plas-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989)). We set aside a finding for factual insufficiency only if the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust. *Id.* (citing *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986)).

## Settling Without Client's Consent

We address first an issue of statutory construction. With respect to several of Bellino's former clients, the Commission alleges that Bellino violated disciplinary rule 1.02(a)(2) by failing to obtain the clients' consent before accepting a settlement offer. Rule 1.02(a)(2) states in pertinent part that "a lawyer shall abide by a client's decisions ... whether to accept an offer of settlement of a matter, except as otherwise authorized by law." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02(a)(2). The evidence in several fact situations in the instant lawsuit indicates that Bellino failed to communicate settlement offers to several clients before he accepted those offers. Bellino argues that in each situation there is no evidence the client ever made a decision concerning settlement, and thus there is no evidence he failed to "abide by a client's decisions" under the rule.

■ We reject Bellino's argument. Under rule 1.02(a)(2), the lawyer's obligation to communicate an offer to a client is logically subsumed under the obligation to abide by the client's decision to accept or reject such an offer. Comment 2 makes this obligation explicit, stating that "a lawyer is obligated to communicate any settlement offer to the client in a civil case."[4] Accordingly, to support a violation of rule 1.02(a)(2) it is unnecessary to show that a client made a decision to accept or reject a settlement offer when the evidence shows the lawyer never communicated the offer to the client.

## Rochelle Johns–Ladd and Adam Johns

■ With respect to Rochelle Johns–Ladd and Adam Johns, Bellino argues there is no evidence to support a finding that Adam Johns was his client, and thus those questions concerning Bellino's conduct with respect to Adam are unsupported by any evidence. Bellino also asserts there is no evidence to support the specific findings in each of the questions directed to his conduct toward Rochelle and Adam.

Our review of the record reveals the following evidence. Rochelle and her son Adam, who was four years old at the time, were in an automobile accident. Rochelle testified that Bellino, her second cousin, offered to handle her and Adam's claims for free, because she was family. On May 27, 1999, she signed a separate retainer agreement for herself and one on behalf of Adam, both of which provided for a 45% contingency fee. Rochelle testified that Bellino told her she would not be charged, to disregard the 45% fee completely, and that the agreement was only necessary in case anybody ever needed to "look in his file." She testified that he later collected a 45% fee.

Rochelle testified that she did not give Bellino permission to settle Adam's claim. She learned that the insurance company had issued payment in settlement but only after her mother called the company.[5] She called Bellino, who denied having settled the claim, but when she told him she had copies of settlement checks, he stated that Adam's money was in the registry of the court. Bellino himself testified that he

4. The sentence begins with an exception: "Except where prior communications have made it clear that a particular proposal would be unacceptable to the client, a lawyer is obligated to communicate any settlement offer to the client in a civil case." There is no argument the exception applies in any of the fact situations in this suit.

5. Rochelle's mother testified that she called the insurance company, and they sent her a facsimile of the settlement checks they had issued. Exhibit P 109 is a facsimile of a draft for $25,000, made payable to Bellino and to Rochelle, as parent and natural guardian of Adam.

"invested" Adam's money in Bellino, Inc., depositing the funds in his own bank account. Rochelle denied giving authorization to do so. Bellino characterized Bellino, Inc. as a "family business," although Bellino himself was its sole shareholder.

Rochelle also denied giving Bellino permission to settle her own claim before he did so. He settled her claim for a total of $ 17,500. She received $10,000 of her settlement from Bellino, but only after she made a demand for it.

We conclude that there is far more than a scintilla of evidence to support the jury's findings that Bellino represented both Rochelle and Adam and that he settled claims for both of them without obtaining the clients' consent, thus violating rule 1.02(a)(2). In addition, there is ample evidence to support the jury's findings that, in his representation of both Rochelle and Adam Johns, Bellino 1) failed to keep the client reasonably informed and to explain a matter to permit the client to make informed decisions (rules 1.03(a) and (b)); 2) engaged in conduct involving "dishonesty, fraud, deceit, or misrepresentation" (rule 8.04(a)(3)), and 3) entered into an arrangement involving an unconscionable fee (rule 1.04(a)). As to Bellino's representation of Adam, there is more than a scintilla of evidence to support the jury's findings that Bellino entered into a business transaction with a client (rule 1.08(a)) and failed to hold a client's funds separate from his own funds (rule 1.14(a)).

### Juan Villanueva

In March 1998, Villanueva signed an agreement for Bellino to represent him after he was injured in a car accident. Villanueva testified that for the first few months, he would go to Bellino's offices to learn the status of his case but thereafter, he could not communicate with Bellino because Bellino no longer had a Spanish-speaking person available to interpret for him. Villanueva testified that he first learned that Bellino had settled his case for $11,000 when, some two years later, his wife's attorney (Mr. Canas) discovered that fact. Thereafter, Bellino asked Villanueva to sign a release for the $11,000 settlement, which he refused to do. By letter to Bellino, Canas asked how much Villanueva would receive after distribution on a subrogation claim and attorney's fees. Villanueva testified he never received from Bellino a disbursement sheet or accounting of money received or distributed, nor has he received any money.

We conclude there is more than a scintilla of evidence to support that Bellino (1) violated rule 1.02(a) by failing to obtain the client's consent before accepting a settlement offer, (2) failed to keep the client reasonably informed about the status of the case (rule 1.03(a)), and (3) failed to render a full accounting of funds received on behalf of the client (rule 1.14(b)).

### Linda Lok and Wing Wong

Linda Lok owns a Chinese restaurant, managed by Wing Wong. Lok and Wong testified that they hired Bellino to obtain green cards for three cooks at the restaurant. Bellino was paid $6,775 in cash and was to obtain the green cards within a year or he would refund their money, in accordance with his advertising. Both Lok and Wong testified that they had great difficulty getting Bellino to return their phone calls when they inquired about the status of the case. Some four years after being retained, Bellino informed Wong that he was referring the case to an immigration lawyer. After they finally learned the new lawyer's identity, it took one to two months for Bellino to send the necessary files. Through the new lawyer, Lok and Wong became aware of a letter from the Immigration and Naturalization Service informing Bellino that one application for a green card was denied for aban-

donment, because Bellino had failed to respond to a request for further information. It is undisputed that Bellino never obtained green cards nor did he return the fee he received to do so. Bellino disputes, among other things, that he ever represented Wing Wong and that he retained any unearned fees.

We conclude there is far more than a scintilla of evidence to support determinations that Bellino neglected a legal matter entrusted to him as a lawyer (rule 1.01(b)(1)), failed to keep a client reasonably informed about the status of a matter (rule 1.03(a)), and failed to return an unearned fee (rule 1.15(d)). After reviewing all of the evidence pertinent to this representation, we conclude that the evidence necessary to support violations of the above-noted rules is not so weak as to render the fact findings clearly wrong or manifestly unjust.

### Fahira Delic and Dr. Bendiks

Ms. Delic testified that she did not give Bellino permission to settle her personal injury case for $24,000. She stated that Bellino merely presented her with a disbursement sheet, on May 29, 1999, showing a total settlement of $24,000. In Ms. Delic's words, he told her "better something than nothing," and asked her to sign the disbursement sheet, which she did. She testified that Bellino gave her a check for $4,000 at that time, but that the $4,000 check was for the property damage to the car, which was separate from the claims settled for $24,000. Bellino gave her no more money until late July 1999, when he disbursed $2,000. In August he gave her a check for $6,000, which was returned for nonsufficient funds. She went to Bellino and demanded $6,000 cash, which he gave her. She testifies he offered her $4,000 more if she would refrain from filing a grievance with the State Bar of Texas.

The record evidence includes a letter of protection to Dr. Bendiks, Delic's chiropractor, signed by Bellino, offering to pay Dr. Bendiks' fees from any settlement recovery. The disbursement sheet shows Dr. Bendiks' fee being reduced from $6,517 to $2,500. Dr. Bendiks' office manager testified that there was no agreement to reduce Dr. Bendiks' fee, and that the doctor had received a check for $2,500 from Bellino, who conditioned payment on Dr. Bendiks' releasing the rest of his claim. Because Dr. Bendiks did not agree to that, he did not cash the check. Bellino denies that he settled Delic's claim without her consent, denies that the $4,000 he gave Delic in May was part of a separate property-damage settlement amount, and states that Dr. Bendiks orally agreed to reduce his fees but later reneged on that agreement.

We conclude the evidence is both legally and factually sufficient to support the jury findings that Bellino engaged in conduct toward Delic involving "dishonesty, fraud, deceit, or misrepresentation" (rule 8.04(a)(3)) and that he failed promptly to deliver funds to a third party (Bendiks) (rule 1.14(b)).

### Failure to Respond to Subpoenas

Mr. Bill Reese, an investigator for the State Bar of Texas, testified that during the course of investigating Villanueva's complaint, the grievance committee issued a subpoena to Bellino requesting him to produce his trust account records, among other documents. Bellino requested a 30–day extension, which was granted, but Bellino never produced any records thereafter. Similarly, the grievance committee had Bellino served with a subpoena requesting records concerning Dr. Bendiks' complaint. Bellino objected that the request was overly burdensome, but the committee overruled that request and Bellino never produced records thereafter.

We conclude the evidence is factually sufficient to support the jury's findings that Bellino knowingly failed to respond to a lawful demand for information from a disciplinary authority (rule 8.01(b)), and that he failed timely to furnish a grievance committee a response or information required by the rules of disciplinary procedure (rule 8.04(a)(8)).

## The Trial Court's Communications with the Jury

Bellino asserts that the trial court reversibly erred in its handling of three questions from the jurors, initiated during deliberations. The Commission responds that Bellino waived these arguments, having failed to make timely objections. Bellino asserts he did not waive error, because he was not given an opportunity to respond.

▇▇▇ The trial court has broad discretion to aid in administering and expediting the fact-finding process. *Stevens v. Travelers Ins. Co.*, 563 S.W.2d 223, 228 (Tex.1978). Rule 285 of the Texas Rules of Civil Procedure provides that the jury may communicate with the trial judge, either "verbally or in writing," through its presiding juror in open court. TEX.R. CIV. P. 285. Rule 286 provides that when the jury desires further instructions it shall appear in open court in a body, shall make a request in writing through its presiding juror, and, if additional instructions are given, they shall be in writing. TEX.R. CIV. P. 286. When the conduct of the trial court violates these rules, the appellant must show that the error was harmful. *Ross v. Tex. Employers' Ins. Ass'n*, 153 Tex. 276, 278–79, 267 S.W.2d 541, 542–43 (Tex.1954) (purported error concerning rules 285 and 286). *See* TEX.R.APP. P. 44.1 (error reversible if probably caused rendition of improper judgment or prevented

appellant from properly presenting case on appeal).

The evidence shows that each question was handwritten on a sheet of paper and signed by the presiding juror. Any direct communication between the judge and counsel concerning the three juror questions is not in the record. The record evidence is from an evidentiary hearing held pursuant to Bellino's motion for new trial, during which Bellino called a juror and himself as witnesses. At the end of the hearing, the trial court made a statement for the record.

▇▇▇ Even if we assume that Bellino has not waived this issue, he fails to show that error, if any, is reversible. The first question asked, "Question No. 23 refers to Rule 8.04(a)(2). We do not have a copy of this rule. May we see 8.04(a)(2)?" There was no written response on the sheet. Bellino asserts the lack of a record at trial raises doubts as to whether or how the trial court communicated any response to the jury to this question. It is undisputed that the jury was not called back into open court to receive the trial court's answer to the question. The juror who testified at the hearing could not recall whether the jury had received an answer to the first question. But the juror stated unequivocally that the trial judge did not enter the jury room or orally answer its questions. Nonetheless, the trial court stated—and Bellino concedes—that the jury charge already contained the requested text of rule 8.04(a)(2). The facts adduced with respect to the first question fall far short of establishing that the trial court's handling of the question probably caused the rendition of an improper judgment.

▇▇▇ The second question asked, "May we see Rochelle Johns–Ladd testimony in the court report?" Handwritten after the question, and signed by Judge Godwin, was the following response:

Rule 287 Texas Rules of Civil Procedure provides: if there is a dispute, that is jurors disagree as to the statement of a witness, the court may have the court reporter's notes regarding the point in dispute read to the jury. Therefore

Specific point in dispute:

Direct or Cross Examination:

Refer to the court's charge and continue your deliberations.

We note that the trial court's response to the second question properly reflects the requirement in civil-procedure rule 287 that the jury must disagree as to testimony before it is read back. TEX.R. CIV. P. 287. Even if Bellino had no opportunity to object to this response, the trial court's written response was proper and any failure to "appear in open court in a body" to receive that answer is not reversible error.

In its third question, the jury asked, "Can we see Exhibit P–110? 3 pages: 1. Canceled check 2. Back of check 3. Deposit on 14 May." The response, signed by Judge Godwin, stated, "P–110 was not entered into evidence. Please refer to the Court's charge and continue your deliberation."

■ Exhibit P–110 was purportedly a copy of the $25,000 check for Adam's settlement and a deposit slip to Bellino's account showing a deposit of $25,000. That exhibit was ruled inadmissible, but only after the Commission had displayed it on a ten-foot-wide screen. Bellino asserts, in essence, that the third question indicates the jury was considering inadmissible evidence, and the trial court's written instruction was not worded strongly enough to vitiate the resulting unfair prejudice.

We disagree. That the jury was considering Exhibit P–110 does not rise to a showing of reversible error. We discussed in our sufficiency analysis the independent evidence in the record that supports the findings that Rochelle Johns–Ladd did not give her consent for Bellino to settle Adam's claim and that Bellino deposited Adam's funds in his own business without her authorization.

## Conclusion

Because the Commission has conceded there is insufficient evidence to support twelve of the jury's affirmative answers in its favor, we reform the judgment to omit the conclusions that the Respondent is guilty of professional misconduct in violation of rules 1.01(b)(2), 1.15(b)(1), 4.01(a), 8.01(a), 8.04(a)(2) and (12). Based upon the other findings of the jury, there is ample evidence to support the determination that Bellino violated rules 1.01(b)(1), 1.02(a)(2), 1.03(a) and (b), 1.04(a), 1.08(a), 1.14(a) and (b), 1.15(d), 8.01(b), and 8.04(a)(1), (3) and (8) of the Texas Disciplinary Rules of Professional Conduct. Accordingly, there is ample evidence to support a judgment of disbarment and to support the specific sanctions imposed with respect to individual complainants. We affirm the judgment as modified.