02-09-204-CV















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00204-CV

 

 


 
 
 Terry Glenn and Monica Glenn
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Robert J. Pack, Jr.
 
 
  
 
 
 APPELLEE 
 
 


 

 

----------

 

FROM THE
393rd District Court OF Denton
COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

          In eighteen issues, Appellants Terry
and Monica Glenn appeal the trial court’s judgment awarding Appellee Robert
Pack damages and attorneys’ fees for his breach of contract and tortious interference with contract counterclaims.  We affirmed in part, reversed and rendered in
part, and reversed and remanded in part.

II.  Factual and Procedural History

          On March 29, 2007, the Glenns signed a contract (Pack-Glenn contract) to purchase
Robert Pack’s residence.  A temporary
residential lease, incorporated into the contract, allowed the Glenns to take possession of the property on March 31.  Closing, scheduled for April 4, did not occur.[2]  On April 3, Pack entered into a contract
(Pack-Funk contract) to sell the property to another couple, the Funks, to
close on April 17.

On
April 9, the Glenns’ then attorney, Daryl Washington,
filed a lawsuit against Pack for breach of contract and a motion to temporarily
enjoin the property’s sale.  On April 16,
at a hearing on the injunction, Washington learned of the Pack-Funk contract
and the April 17 closing date.  At 4:30
p.m. on April 16, Washington filed a lis pendens on Pack’s residence.  On April 17, Washington sent a copy of the lis pendens and a letter
asserting that a constructive lien had been placed on Pack’s residence to both
Pack’s real estate agent, Lisa DeLeon, and Pack’s
attorney, Roger Yale.[3]  The April 17 closing did not occur.  On May 25, the Funks, citing the lis pendens as the reason,
terminated the Pack-Funk contract.[4]  In response to the Glenns’
suit, Pack requested a declaratory judgment that the Glenns
breached the Pack-Glenn contract and that the lis pendens constituted a fraudulent filing.  Pack also filed counterclaims for damages and
attorneys’ fees based on chapter 12 of the civil practice and remedies code,
breach of the Pack-Glenn contract, and tortious
interference with the Pack-Funk contract.

During
the charge conference, the trial court dismissed Pack’s chapter 12 and
declaratory judgment claims and submitted the breach of contract, tortious interference, and attorneys’ fees claims to the
jury.  The jury returned a verdict in
Pack’s favor, awarded him damages on all submitted claims, and awarded Pack
appellate, but not trial, attorneys’ fees. 
The trial court set aside the $0 trial attorneys’ fees award and awarded
Pack $82,500.  The
trial court denied the Glenns’ motion for new trial.  This appeal followed.

III.  Legal and Factual Sufficiency

The Glenns bring eighteen issues on appeal.  In issues eight through fifteen, the Glenns challenge the legal and factual sufficiency of the
evidence to support the jury’s findings that they breached the Pack-Glenn
contract and tortiously interfered with the Pack-Funk
contract.  The Glenns
also argue that the trial court erred by allowing the acts of an attorney to be
imputed to a client and the client’s wife (issues one and two); allowing the
jury to consider damages on Pack’s tortious
interference claim (issue three); failing to apply the one satisfaction rule
(issue four); submitting a jury instruction awarding the Glenns’
earnest money to Pack as damages (issue five); responding incorrectly to
juror’s questions during deliberations (issue six); failing to require Pack to
segregate his attorneys’ fees among his four counterclaims (issue sixteen); and
failing to grant a mistrial due either to adverse publicity (issue seventeen)
or to the court reporter’s actions in taking the record with her on vacation
(issue seven).  And, in issue eighteen,
the Glenns contend that the cumulative impact of these
errors requires reversal.

A.  Standards of Review

          We may sustain a legal sufficiency
challenge only when (1) the record discloses a complete absence of evidence of
a vital fact; (2) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a mere scintilla; or (4) the
evidence establishes conclusively the opposite of a vital fact.  Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328,
334 (Tex. 1988), cert. denied, 526
U.S. 1040 (1999); Robert W. Calvert, “No
Evidence” and “Insufficient Evidence” Points of Error, 38 Tex. L. Rev. 361,
362–63 (1960).  In determining whether
there is legally sufficient evidence to support a finding under review, we must
consider evidence favorable to the finding if a reasonable factfinder
could and disregard evidence contrary to the finding unless a reasonable factfinder could not. 
Cent. Ready Mix Concrete Co.,
Inc. v. Islas, 228 S.W.3d
649, 651 (Tex. 2007); City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).

          When reviewing an assertion that the
evidence is factually insufficient to support a finding, we set aside the
finding only if, after considering and weighing all of the evidence in the
record pertinent to that finding, we determine that the evidence is so weak, or
so contrary to the overwhelming weight of the evidence, that the answer should
be set aside and a new trial ordered.  Pool v. Ford Motor Co.,
715 S.W.2d 629, 635 (Tex. 1986) (op. on reh’g); Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965); In re King’s Estate, 150
Tex. 662, 244 S.W.2d 660, 661 (1951).

B. 
Breach of Contract

To
recover for breach of contract, a plaintiff must prove (1) a valid contract,
(2) that the plaintiff performed or tendered performance under the contract,
(3) that the defendant breached the contract, and (4) that the plaintiff
suffered damages as a result of the breach. See
Muenster Hosp. Dist. v. Carter, 216 S.W.3d 500,
505 (Tex. App.—Fort Worth 2006, no pet.). 
The parties dispute each other’s claim to performance and claim that the
other party breached.  Both sides also
point to the other side’s alleged breach as an excuse for their own
non-performance.  The Glenns
argue that Pack breached the contract by failing to deliver possession of the
residence on the morning of March 31. 
Additionally, Monica Glenn claims that she could not have breached the
contract because of her limited involvement in the transaction. Pack blames his
late departure from the residence on the Glenns’ late
escrow payment and argues that Terry’s text messages and the Glenns’ failure to take possession the night of March 31
show that the Glenns unequivocally breached the
contract.

1. 
Evidence at Trial

The
Pack-Glenn contract called for the Glenns to deposit
$50,000 into an escrow account upon contract execution.  Terry Glenn testified that the Glenns deposited the funds into escrow after 5:00 p.m. on
March 30.  Pack testified that late in
the afternoon on March 30, prior to the Glenns’
escrow fund deposit, because he was unsure of the Glenns’
intentions in pursuing the contract, he cancelled his moving company
reservation.  After Pack received notice
of the Glenns’ escrow fund deposit, he arranged for a
rental truck and enlisted friends and family to assist him in packing and
moving.

Beginning at 9:00 a.m. on March 31, the parties, in
increasingly frustrated text and email messages, negotiated numerous revised
possession deadlines.  Around
2:30 p.m., Craig Rozen, acting as Terry’s agent, sent
an email to Pack declaring the contract “null and
void” for Pack’s failure to be “off the property Friday night March 30.”  Despite this email, the parties continued to
negotiate possession.

Around
9:30 p.m. on March 31, after a day-long exchange of tense communications,
Robert DeLeon sent Terry a text stating that he could
take possession and that Terry should bring his checkbook with him.  Terry, after another heated exchange,
indicated that Pack could “[k]eep [his] [expletive]
house! I’ll biuld [sic]!”  DeLeon replied that
Terry could pick up his earnest money from the title company.  Terry then responded, “[Expletive] that I
might sue and still get the house!”  Neither
of the Glenns appeared at Pack’s house to take possession
on the night of March 31.

Terry
testified that his text messages and statements were made in frustration; that
he did not take possession after it was offered late on March 31 because he
needed to be home with his family; that, regardless of his or Rozen’s communications on March 31, he still wanted the
house; and that on April 1, he attempted to finalize his possession and
purchase of Pack’s residence.  Pack
testified that he authorized Robert DeLeon to accept
Terry’s contract termination. Robert DeLeon testified
that on April 1, the day after the Glenns terminated
the Pack-Glenn contract, he met with the Funks to negotiate a contract and that
the parties signed the Pack-Funk contract on April 3.  Robert DeLeon also
testified that in the common course of business, possession of the property is
due anytime on the date listed in the contract.

Monica testified that she signed, but had not read, the
Pack-Glenn contract; that she relied on Terry to handle everything related to
the contract; that she did not remember when she realized she would not be
moving into the house on March 31; and that, after March 31, she had very
little to do with the house.  She also
stated that she did not attend the closing scheduled for April 4.

2. 
Analysis

Terry’s
text messages amount to an anticipatory repudiation and establish more than a
scintilla of evidence to support Pack’s breach of contract claim.  See
Jenkins v. Jenkins, 991 S.W.2d 440, 447 (Tex. App.—Fort Worth 1999, pet. denied)
(noting repudiation is conduct that shows a fixed intention to abandon,
renounce, and refuse to perform the contract). 
Further, even though Terry indicated that he would take possession, he
became angry when asked to bring his checkbook and did not take possession.  Thus, Terry cannot claim that his repudiation
was due to a genuine misunderstanding as to matters of fact or law.  See id.

The Glenns rely on Monica’s
relative lack of involvement to challenge the trial court’s finding that Monica
breached the Pack-Glenn contract.  But a
party to a contract is not absolved from the legal effect of the instrument by
her willful ignorance of a contract’s terms, her failure to affirmatively
involve herself, or by relying on the actions of others to fulfill her
obligations.  See Hampshire v. Hampshire, 485 S.W.2d 314, 316 (Tex. Civ. App.—Fort Worth 1972, no writ.)
(stating that, absent fraud, a party signing a
contract is charged with knowledge of its contents and its legal effect); see also Vandeventer v. All Am. Life & Cas.
Co., 101 S.W.3d
703, 712 (Tex. App.—Fort Worth 2003, no pet.) (requiring novation before a party
may be relieved of its contractual obligations).

The
record shows that Pack’s delayed departure was caused by the Glenns’ late escrow deposit and supports the conclusion
that Pack made every effort to, and did, meet the terms of the contract.  Moreover, Rozen’s
email and Terry’s text messages support Pack’s claim that Terry terminated, and
thus breached, the contract.  And even
though Monica was not personally involved in the communications or events on
March 31, her admitted lack of involvement with the property after March 31
shows an abandonment of her contractual obligations because she did not attempt
to continue with the transaction.

Based
on the above, we hold that the evidence is legally sufficient because the evidence supporting the jury’s verdict as to the Glenns’ breach of contract is more than a mere
scintilla.  See Uniroyal, 977 S.W.2d
at 334.  Furthermore, we conclude
that the evidence is also factually sufficient because, considering all the
evidence in the record pertinent to this finding, it is not so weak, or so
contrary to the overwhelming weight of the evidence, that the jury’s answer
should be set aside and a new trial ordered. 
See Pool, 715 S.W.2d at 635; VingCard a.s. v. Merrimac Hospitality Sys.,
Inc., 59 S.W.3d 847, 860–61 (Tex. App.—Fort Worth
2001, pet. denied).

Accordingly,
we overrule the Glenns’ eighth, ninth, tenth, and
eleventh issues.

C.  Tortious
Interference

To
recover for tortious interference with contract, a
plaintiff must show (1) the existence of a contract subject to interference;
(2) a willful and intentional act of interference; (3) that was a proximate
cause of the plaintiff’s damages; and (4) actual damage or loss.  Tex. Beef Cattle Co. v. Green, 921 S.W.2d
203, 210 (Tex. 1996) (op. on reh’g).  The record supports the jury’s determination
that the Pack-Funk contract was valid and that Pack suffered damages by the
contract’s termination. Therefore, we must consider whether the Glenns’ actions were willful and intentional and whether
their actions were the proximate cause of Pack’s damages.

1. 
Evidence at Trial

At
4:30 p.m. on April 16, the Glenns’ then attorney,
Daryl Washington, filed a lis pendens
on Pack’s residence.[5]  On April 17, Washington sent a copy of the lis pendens and a letter stating
that a “constructive lien” had been placed on Pack’s property to Pack’s
attorney, Yale, and to Lisa DeLeon.  Washington’s letter also stated that Lisa and
Yale were “required to give any and all potential purchasers notice of any
liens on the property.”  On May 25, the
Funks terminated the Pack-Funk contract because Pack was “unable to remove the
[l]is [p]endens from the title to the property. . .
.”  The Funks’ termination letter does
not mention Washington’s letter or a “constructive lien.”

Pack
testified that Lisa told him that the Funks cancelled the Pack-Funk contract because a lien had been placed on Pack’s residence
and that Washington, in an effort to stop Pack from selling to the Funks, had
represented himself as a member of Pack’s team in a call to the Funk’s title
company.  Pack also stated that
Washington sent a copy of the April 17 letter to him and to the Funk’s title
company.[6]

Lisa
testified that she never met with the Funks, that her husband wrote the
Pack-Funk contract, that her knowledge of the Pack-Funk contract came from her
husband, that “there was a lien on the property,” that liens create a cloud on
the title, and that “if there was any type of lien or anything attached to the property,
you cannot sell it.”  Lisa did not
testify about the phone call that, per Pack’s testimony, Washington made to the
Funks’ title company.

Robert
DeLeon testified that he thought the lis pendens was filed as a “lis pendens lien.”[7]  He also alternatively stated that (1) the “lis pendens” and (2) the “lien”
kept the Funks from closing on Pack’s house.

The
Funks, a representative of the Funks’ title company, and Washington did not
testify at trial.[8]

2. 
Proximate Cause

Proximate
cause is that cause, unbroken by any new and independent cause, that produces
injury and without which the injury would not have occurred.  Portlock
v. Perry, 852 S.W.2d 578, 583 (Tex. App.—Dallas
1993, writ denied); see also Hill v.
Heritage Res., Inc., 964 S.W.2d 89, 126 (Tex.
App.—El Paso 1997, pet. denied) (noting that the classic proximate cause test
applies to tortious interference cases). It consists
of two elements: cause in fact and foreseeability.  Portlock, 852 S.W.2d
at 583.  Both elements must be
present and may be proven by direct or circumstantial evidence, but proximate
cause may not be established by mere guess or conjecture.  Id.  “Cause in fact” means that the act or
omission complained of was a substantial factor in producing the injury and
without it no harm would have resulted.  Id.  “Foreseeability”
means that the actor, as a person of ordinary intelligence, should have
anticipated the dangers that his act created for others. Id 

A lis pendens
is available to a party seeking affirmative relief during the pendency of an
action involving title to real property. 
Tex. Prop. Code Ann. § 12.007(a) (Vernon 2004).  A lis pendens does not prevent conveyance; it merely puts the
purchaser on notice as to the status of the land.  See
Collins v. Tex Mall, L.P., 297 S.W.3d 409, 418 (Tex. App.—Fort Worth 2009, no pet.)  As part of the judicial process, a lis pendens enjoys an absolute
privilege and cannot serve as a basis for a tortious
interference claim.  See Chale Garza Invs., Inc. v. Madaria, 931 S.W.2d 597, 600–01 (Tex. App.—San Antonio 1996, writ denied).

3. 
Analysis

Pack
based his tortious interference claim on Washington’s
letter, arguing that the “constructive lien” language constituted a second,
unstated cause of the Funks’ contract termination.  Prior to the jury charge, the Glenns moved for an instructed verdict on Pack’s tortious interference claim.  The trial court acknowledged the lis pendens’ absolute privilege,[9] but it
denied the motion.

Considering
the evidence favorable to the finding if a reasonable factfinder
could, we cannot say that more than a scintilla of evidence supports the trial
court’s denial of an instructed verdict on Pack’s tortious
interference claim.  Both Lisa DeLeon and Pack testified that they had no personal
knowledge of the reason the Funks cancelled the Pack-Funk contract; their
testimonies cannot serve as basis for Pack’s cause of action.  See
Tex. R. Evid. 602; In re Christus Spohn
Hosp. Kleberg, 222 S.W.3d 434, 440 (Tex. 2007)
(noting that lay witnesses may only testify about matters within their personal
knowledge); Wal-Mart Stores, Inc. v.
Gonzalez, 968 S.W.2d 934, 937–38 (Tex. 1998)
(indicating that a witness’ testimony unsupported by personal knowledge was
“mere speculative, subjective opinion of no evidentiary value.”).  Pack’s testimony about what Lisa told him
about Washington’s phone call to the Funks’ title company is likewise
speculative because Pack did not have personal knowledge of Washington’s
actions.  Wal-Mart Stores, Inc., 968 S.W.2d at 938; Savage
v. Psychiatric Inst. of Bedford, Inc., 965 S.W.2d
745, 753–54 (Tex. App.—Fort Worth 1998, pet. denied).

Robert
DeLeon’s testimony amounted to his speculation as to
why the Funks terminated the contract and cannot ascribe intent or motive to
the Funks. See Armstrong-Berger, Inc. v.
Dickson/Wells Architects, Inc., No. 05-94-01225-CV, 1995 WL 464283, at *2
(Tex. App.—Dallas July 31, 1995, writ dism’d w.o.j.) (not designated for
publication) (stating that a “witness cannot testify
to another person’s intent or motive”); Found.
Reserve Ins. Co. v. Starnes, 479 S.W.2d 330, 334
(Tex. Civ. App.—Fort Worth 1972, no writ) (indicating a witness should neither
testify to the significance or propriety of another’s conduct nor be permitted
to state his opinion with respect to another’s intent, motive, or purpose); Medina v. Sherrod, 391 S.W.2d 66, 69 (Tex. Civ. App.—San Antonio 1965, no writ)
(same); Danaho Ref. Co. v. Pan Am. Petroleum Corp.,
383 S.W.2d 941, 946 (Tex. Civ. App.—Waco 1964, writ ref’d n.r.e) (stating that
proximate cause of damage is not ordinarily the proper province of lay opinion
evidence in tort cases).  Therefore,
Robert DeLeon’s testimony cannot show that the
“constructive lien” language was a substantial factor in bringing about the
Funks’ contract termination and that without it the Funks would not have
cancelled the contract.

This
leaves Pack’s testimony that both he and the Funks’ title company received a
copy of Washington’s letter, but it is not enough to show more than a scintilla
of evidence ascribing a secondary reason to the Funks’ actions in light of the
reason stated in the Funks’ termination letter. 
The Funks’ termination letter conclusively established that the Funks
cancelled the Pack-Funk contract because Pack failed to remove the lis pendens.  The Funks’ actions were a natural and logical
result of a lis pendens
filing.  Cf. King v. Tubb,
551 S.W.2d 436, 444 (Tex. Civ. App.—Corpus Christi 1977, no writ.) (stating that a lis pendens’ purpose is to notify a party of a competing claim
to real property).  Thus, Pack failed to
show as a matter of law that the constructive lien language in Washington’s
letter was a cause in fact of the Funks’ contract termination.  By extension, Pack has failed to prove that
the Glenns proximately caused the termination of the
Pack-Funk contract.

Having
concluded that Pack failed to meet the burden of proving proximate cause, we
sustain the Glenns’ twelfth and thirteenth issues and
reverse that portion of the trial court’s judgment on the jury’s finding that
the Glenns tortiously
interfered with the Pack-Funk contract.[10]

D. 
Attorneys’ Fees

Glenn complains that Pack failed to properly segregate
attorneys’ fees.  Pack’s attorney
testified that he and Pack had a contingent fee agreement and that he had
incurred attorneys’ fees of approximately $92,500 throughout preparation of the
entire case for trial.  Of that $92,500,
Pack’s attorney testified that approximately $10,000 was incurred in furthering
Pack’s tortious interference claim, and that the
remaining $82,500 was incurred prosecuting the remaining claims for breach of
contract, declaratory judgment, and fraudulent filing (Chapter 12).  Pack’s attorney did not segregate the $82,500
between the breach of contract, declaratory judgment, and fraudulent filing
claims.

The trial court dismissed Pack’s claims for declaratory
judgment and fraudulent filing before sending the tortious
interference and breach of contract claims to the jury.  The jury found for Pack on both claims, but it
awarded Pack $0 for his pretrial and trial attorneys’ fees.  The trial court granted judgment
notwithstanding the verdict (JNOV) on the jury’s
pretrial and trial amount of $0, replacing it with $82,500.

A trial court may disregard a jury verdict and render a JNOV if no evidence supports the jury finding on an issue
necessary to liability or if a directed verdict would have been proper.  See
Tex. R. Civ. P. 301; Tiller v. McLure, 121 S.W.3d 709, 713
(Tex. 2003); Fort Bend Cnty. Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991).  A directed verdict is proper only under
limited circumstances: (1) when the evidence conclusively establishes the right
of the movant to judgment or negates the right of the
opponent; or (2) when the evidence is insufficient to raise a material fact
issue.  Prudential Ins. Co. of Am. v. Fin. Review Servs.,
Inc., 29 S.W.3d 74, 77 (Tex. 2000); Farlow v. Harris Methodist Fort Worth Hosp.,
284 S.W.3d 903, 919 (Tex. App.—Fort Worth 2009, pet.
denied).  To determine whether the trial
court erred by rendering a JNOV, we view the evidence
in the light most favorable to the verdict under the well-settled standards
that govern legal sufficiency review.  See Wal-Mart Stores, Inc. v.
Miller, 102 S.W.3d 706, 709 (Tex. 2003).

The $0 award is clearly wrong because the jury found both
tortious interference and breach of contract.  See
Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)
(Vernon 2008) (stating that a person “may recover” reasonable attorneys’ fees,
in addition to the amount of a valid claim, if the claim is for an oral or
written contract); Smith v. Patrick W.Y.
Tam Trust, 296 S.W.3d 545, 547 (Tex. 2009)
(indicating that if attorneys’ fees are proper under 38.001(8), the trial court
has no discretion to deny them); Cale’s Clean Scene
Carwash, Inc. v. Hubbard, 76 S.W.3d 784, 787, 787
n.4 (Tex. App.—Houston [14th Dist.] 2002, no pet.)
(indicating that attorneys’ fees are distinct from damages and that attorney’s
comment in opening statement that he was willing to let the jury decide whether
he ought to get attorneys’ fees has no bearing on statutorily awarded attorneys’
fees in breach of contract claim). 
However, Pack’s attorney only segregated $10,000 for the tortious interference claim.  Thus, we cannot say what amount of attorneys’
fees beyond the $10,000 that Pack would be entitled to because Pack’s attorney
did not otherwise segregate the fees.  See Tony Gullo
Motors I, L.P. v. Chapa, 212 S.W.3d 299, 311
(Tex. 2006) (requiring fee claimants to segregate fees between claims for which
they are recoverable and for which they are not).  When, as here, segregation is required,
Pack’s failure to segregate fees does not mean that he cannot recover any fees;
evidence of unsegregated attorneys’ fees for the
entire case is some evidence of what the segregated amount should be, and
remand is required to calculate the segregated award.  Id. at 313–14.

Therefore,
we sustain the Glenns’ sixteenth issue and reverse
and remand for further proceedings on the issue of attorneys’ fees.[11]

IV.  Trial Court’s Actions

In issues five, seven, and seventeen, the Glenns complain that the trial court abused its discretion
by allowing the jury to award Pack the Glenns’ earnest money and by failing to grant a
mistrial.  We will consider issue seven,
in which the Glenns assert that the unavailability of
the reporter’s record warranted a mistrial, with issue six, in which they
allege the trial court erred in its responses to questions passed by the jury
after submission of the case.

A.  Standard
of Review

To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.  Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007); Cire v. Cummings, 134 S.W.3d 835, 838–39
(Tex. 2004).  An appellate court
cannot conclude that a trial court abused its discretion merely because the
appellate court would have ruled differently in the same circumstances.  E.I. du
Pont de Nemours & Co. v. Robinson, 932 S.W.2d
549, 558 (Tex. 1995); see also Low,
221 S.W.3d at 620.

An abuse of discretion does not occur when the trial
court bases its decisions on conflicting evidence.  In re Barber, 982 S.W.2d 364,
366 (Tex. 1998) (orig. proceeding). 
Furthermore, an abuse of discretion does not occur as long as some evidence
of substantive and probative character exists to support the trial court’s
decision.  Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002).

B.  Jury Instruction on Earnest Money

In
issue five, the Glenns argue that the Pack-Glenn
contract prohibited the jury from awarding the Glenns’
earnest money to Pack as compensation for his breach of contract claim.

To
preserve a complaint for appellate review, a party must have presented to the
trial court a timely request, objection, or motion that states the specific
grounds for the desired ruling, if they are not apparent from the context of
the request, objection, or motion.  Tex. R. App. P. 33.1(a). 
If a party fails to do this, error is not preserved, and the complaint
is waived.  Bushell v. Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh’g).
 The objecting party must get a ruling
from the trial court. This ruling can be either express or implied.  Frazier v. Yu, 987 S.W.2d 607, 610 (Tex.
App.—Fort Worth 1999, pet. denied).

The Glenns contend that the judgment is defective because it
awards money not properly before the court. 
But the Glenns have not preserved this
contention for our review because even though they initially objected to the
instruction in the charge conference, the Glenns
later agreed that the jury could decide the issue.  At the end of the parties’ discussions on the
breach of contract damages instruction, the Glenns
waived their prior objection to the inclusion of the escrow funds when they
narrowed the focus of their objection to the issue of treble damages:

The jury can decide
[if Pack] gets the $50,000 [escrow funds]. 
That’s fine.  If that’s what they
decide, we will have to accept it.  But
they should not have then the right to say we will give you three times the
amount when they did not do that portion . . . .  They should not get the issue of giving them
triple damages . . . . That’s what we’re talking about.  That’s the only thing I am talking about. 

 

See Tex. R. App. P.
33.1(a); Tex. R. Civ. P. 274 (requiring objecting party to raise all objections
to the charge prior to submission of the charge to the jury); Barnett v. Coppell N. Tex. Court, Ltd.,
123 S.W.3d 804, 825 (Tex. App.—Dallas 2003, pet
denied) (indicating alleged error in jury charge must be preserved by distinctly
designating the error and the grounds for objection).

Because
the Glenns failed to preserve this objection, we
overrule their fifth issue.

C.  Response to Jury Questions and Absent
Reporter’s Record

During deliberations, the jury asked for a list
describing each compact disc containing the parties’ text and audio messages
entered into evidence.  Because no list
had been entered into evidence, the trial court denied the request.  The jury then asked for a copy of Craig Rozen’s testimony so they could create a timeline.  At the time of the jury’s request, the court
reporter’s transcript was unavailable.[12]  The trial
court did not abate deliberations; instead, the court instructed the jury that
if they disagreed as to specific testimony, the jury could request to have that
testimony read to them.  The Glenns objected to the trial court’s responses to the jury,
and they requested that deliberations be abated until the court reporter
returned.  The trial court overruled the Glenns’ objection and denied their abatement request.  The jury returned to deliberations without
asking any additional questions about the compact discs or Rozen’s
testimony.

There is no evidence that the jury disagreed on
specific aspects of Rozen’s testimony.  Thus, the trial court properly responded to
the jury’s questions.  See Tex. R. Civ. P. 287; Bellino v. Comm’n for
Lawyer Discipline, 124 S.W.3d 380, 390 (Tex.
App.—Dallas 2003, pet. denied) (noting that the jury must disagree before
witness testimony can be read back to the jury); see also Caterpillar
Tractor Co. v. Boyett, 674 S.W.2d
782, 793 (Tex. App.—Corpus Christi 1984, no pet.) (stating
that rule 287 does not require reading back witness testimony because some of
the jurors have failed to remember the testimony).  Having concluded that the trial court did not
abuse its discretion in its responses, we overrule the Glenns’
sixth and seventh issues.

D. 
Adverse Publicity

In issue seventeen, the Glenns
argue that the trial court erred by denying their motion for mistrial due to
adverse publicity.

Texas Rule of Civil Procedure 324 requires that to
appeal a complaint of jury misconduct, a party must first raise the point in a
motion for new trial.  See Tex. R. Civ. P. 324(b)(1), 327(a),(b).  The
Glenns failed to raise the issue in either their
motion for new trial or in the hearing on the motion.  Thus, we overrule the Glenns’
seventeenth issue. See Tex. R. App.
P. 33.1; Tex. R. Civ. P. 324(b)(1); Weaver
v. Westchester Fire Ins. Co., 739 S.W.2d 23 (Tex.
1987).

V. 
Conclusion

We sustain the Glenns’ twelfth, thirteenth, and sixteenth issues, overrule
their fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and seventeenth
issues, and decline to reach the remaining issues.  See Tex.
R. App. P. 47.1.  Therefore, we affirm
the portion of the trial court’s judgment that the Glenns
breached the Pack-Glenn contract and award of the $50,000 escrow funds, reverse
the trial court’s judgment pertaining to Pack’s tortious
interference claim and render judgment that Pack take nothing on his tortious interference claim, and remand this case to the
trial court for further proceedings to determine attorneys’ fees.

 

BOB
MCCOY
JUSTICE

 

PANEL:  LIVINGSTON, C.J.;
MCCOY and MEIER, JJ.

 

DELIVERED:  January 13, 2011











          [1]See Tex. R. App. P. 47.4.





[2]Both
parties cite the other’s breach for the failure to close on the contract.





[3]Pack
cites Washington’s letter as the basis for his tortious
interference claim.  Relevant portions of
the proceedings and evidence are set forth below.





[4]Ultimately, Citimortgage foreclosed on the property and sold it in
September 2007.





[5]Washington learned
of the Pack-Funk contract and scheduled closing at the April 16 hearing on the Glenns’ motion to enjoin the sale of Pack’s residence.





[6]The
copy of Washington’s letter that Pack entered into evidence is addressed to
Yale and lists Lisa DeLeon as the only party copied.





[7]The
copy of the filed document entered into evidence states that it was filed as a
“lis pendens,” not as a “lis pendens lien.”  The document requests that the “court impose
a constructive lien on” Pack’s residence, but it does not assert that a
constructive lien, in fact, existed.





[8]Both
Funks were subpoenaed but not called to testify.





[9]The
jury charge’s relevant portion reads:

The filing of a [l]is [p]endens is absolutely privileged and can form no basis for a
claim of interference.  A [l]is [p]endens is a court document that places potential purchasers
on notice that there is a claim pending in court which would entitle the person
bringing the claim to the property.





[10]Based
on our disposition of the Glenns’ twelfth and
thirteenth issues, we do not reach the Glenns’ first,
second, third, fourth, fourteenth, fifteenth, and eighteenth issues.  Tex. R. App. P. 47.1.





[11]We
express no opinion on Clause 17 of the Pack-Glenn contract relative to any
claim of contractually-based attorneys’ fees.





[12]The
court reporter had gone on vacation out of state, taking her computer
containing the trial record with her.